FILED

SEP 27 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

RECEIVED

SEP 2019

SOONG
CLERK DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| Plaintiff, | )<br>)<br>)<br>) |
| vs. | )<br>) CASE NO. 04 06 2750 |
| | ) EMPLOYMENT DISCRIMINATION<br>) COMPLAINT |
| Defendant(s). | )<br>) |

1.   Plaintiff resides at:

Address   2101 Mangrove Ct

City, State & Zip Code   Antioch, CA   94509

Phone   (925) 698-5028

2.   Defendant is located at:

Address   160 Spear Street   Suite 800

City, State & Zip Code   San Francisco, CA 94105-1545

3.     This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employ-

ment discrimination.  Jurisdiction is conferred on this Court by 42 U.S.C. Section 2000e-5.

Equitable and other relief is sought under 42 U.S.C. Section 2000e-5(g).

4.     The acts complained of in this suit concern:

a. __ Failure to employ me.

b. __ Termination of my employment.

1    c. __ Failure to promote me.

2    d. _X_ Other acts as specified below.

3    Failure/refusal to provide me with an effective Reasonable

4    accommodation of Telework. Forcing me to take leave

5    instead of providing me with The Reasonable accomodation

6    of full time telework. Forcing me to lose income, Benefits

7    and eventually my employment — I was wrongfully terminated

8    because of their refusal to effectively accomodate me

9    under managements lies under oath at hearing to EEOC AJ.

5.    Defendant's conduct is discriminatory with respect to the following:

10    a. __ My race or color.

11    b. __ My religion.

12    c. __ My sex.

13    d. __ My national origin.

14    e. _X_ Other as specified below.

15    Disability.

16    6.    The basic facts surrounding my claim of discrimination are:

17    I am a known qualified disabled employee Management

18    refused to approve my Reasonable accommodations Request

19    for the Reasonable Accomodations of Telework

20    under false preseses + lied the agency did not

21    approve Benefit authorizers the RA of telework

22    I provided evidence that is a lie + that since 2016

23    The Agency has approved BA's RA of telework since 2016

24

25    7.    The alleged discrimination occurred on or about _since 2014 first filed eeoc complain_

26    (DATE) June 2014

27    8.    I filed charges with the Federal Equal Employment Opportunity Commission (or the

28    California Department of Fair Employment and Housing) regarding defendant's alleged

Form-Intake 2 (Rev. 4/05)          - 2 -

1  discriminatory conduct on or about _Since 2014 - when first filed eeoc complaint_

2  (DATE)

3  9.      The Equal Employment Opportunity Commission issued a Notice-of-Right-to-Sue letter

4  (copy attached), which was received by me on or about _June 25, 2019_ .

5  (DATE)

6  10.     Plaintiff hereby demands a jury for all claims for which a jury is permitted:

7          Yes _____     No _____

8  11.     WHEREFORE, plaintiff prays that the Court grant such relief as may be appropriate,

9  including injunctive orders, damages, costs, and attorney fees.

10

11  DATED: _9-23-2019_          _Jennifer Tom_

12                              SIGNATURE OF PLAINTIFF

13

14  (PLEASE NOTE: NOTARIZATION      _Jennifer Tom_

15  IS NOT REQUIRED.)              PLAINTIFF'S NAME

16                                (Printed or Typed)

17

18

19

20

21

22

23

24

25

26

27

28

Form-Intake 2 (Rev. 4/13)              - 3 -

# UNITED STATES DISTRICT COURT
# 9 NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| JENNIFER TOM, | Request No. 2019002750 |
| | Appeal No. 0120172221 |
| | Hearing No. 550-2015-00104X |
| Complainant, | Agency No. SF-14-0624-SSA |
| | |
| v. | |
| | September 23, 2019 |
| Andrew Saul, | |
| Commissioner, | |
| Social Security Administration, | Re: Office of Federal Operations Reconsideration |
| | Decision  Signed June 25, 2019 |
| Agency, | |

### Request Decision Be Rescinded As The Decision Is Based on False Testimony From Management Evidence Here in Provided By Agency's Council See Documents

I am requesting that you rescind the decision signed June 25, 2019 as I am including again definitive proof that management lied under oath about that the essential functions of the Benefits Authorizer Job entailed specifically the lie that answering the Agency toll-free 800 number aka SPIKE is an essential function of the Benefit Authorizer job. Further that managements false testimony to the Administrative Law Judge (AJ) when management claimed that the essential functions of the Benefit Authorizer (BA) job could not be performed from home via 100% full time telework as a Reasonable Accommodations (RA) is false because the Agency has approved over 20+ qualified disabled Benefit Authorizers to telework as an RA since **2016**, the Agency has also allowed over 100+ BA's for the Work At Home By Exemption under Article 39 to work from home five days a week since **2015** also important to note since the telework Pilot Program there is one none disabled BA who is working 100% remotely. Therefore the EEOC AJ's decision dated April 7, 2017 is clearly based on the false facts management made under oath about the Agency not being able to approve my Reasonable Accommodations (RA) request for telework because management claimed it was not possible that the Agency did not approve any BA to telework as a reasonable accommodation proof management lied see in the documents provided to me by Agency's Counsel "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" which clearly shows in black and white that the Agency's has determined since 2015 the essential functions Benefit Authorizer job do not include answering Agency's toll-free 800 number and that the essential functions Benefit Authorizer job can be performed 100% via telework. A fact that cannot be disputed as the evidence was provided to me from Agency's Counsel! Agency's Counsel and Agency's management lied under oath to the EEOC AJ and even though I proved I was receiving successful performance appraisals while working 100% via telework under the telework pilot program proving I was already performing the essential functions of the BA job without an effective RA, the EEOC AJ incorrectly ignored that crucial evidence and ruled in favor of the Agency, because the EEOC AJ ignored the evidence that not only could the Agency allow qualified disabled BA's the RA of telework full time she also ignored the fact that BA's nine (9) month training program does not involve learning how to answer the 800 number phones, she also ignored the evidence I provided proving that there were non-disabled journeyman level BA's (not trainees) who passed their three day examination who never answered the 800 number phones. In my appeal there were still non-

disabled BA's who never received training or answered the 800 number phones because it is not an essential function of the job to date there are journeyman level BA's who do not have to answer the 800 number phones and are working BA work: processing claims, AJ cases, processing incoming requests to update the master file queries which is the true work of the BA.

The Office of Federal Operation's (OFO) decisions to uphold the AJ's decision is clearly solely based on management's false assertions made under oath to the AJ at the hearing noted in AJ's decision dated April 7, 2017 and Agency's "AGENCY RESPONSE TO APPEAL OF AGENCY FINAL ORDER" filed August 21, 2017 and is completely devoid of any mention of the appeals my attorney at the time filed "APPELLANT'S BRIEF IN SUPPORT OF APPEAL" filed July 14, 2017 and my appeal dated March 2, 2019 to the OFO after my attorney withdrew from the case, the appeal from my attorney and myself prove management lied under oath about what the essential job functions of the BA were. I also filed an appeal to the OFO's decision to uphold the AJ decision on the grounds that the original OFO decision maker was the same employee who rendered the reconsideration decision. I provided Carlton M. Hadden, Director, Office of Federal Operations copy documents I was provided by Agency's Counsel proving the Agency has provided qualified disabled BA's and non-disabled BA's approval to telework full time (see the attached documents) provided prior to his June 25, 2019 decision, which proved definitively the AJ decision was based on lies management told her at the January 2017 EEOC hearing. On numerous occasions I have provided the OFO documented evidence Agency's Council provided me that proves that managements the sworn testimony about the essential job functions of the Benefit Authorizer are lies and because the AJ rendered her decision solely based on managements testimony the AJ's decision is invalid based on documented evidence the Agency was not only capable of approving my RA request for full time telework because I am a known qualified disabled employee but that the Agency has been providing the RA of telework to qualified disabled BA's since 2016 and has also allowed disabled BA's the approval of work at home by exemption under article 39 since 2015 and since at least 2016 there are non-disabled Benefit Authorizers who don't answer the 800 number either coupled with the fact that the nine (9) month training of the BA's does not include learning how to answer the 800 number and that there BA's who have been employed since 2015 who have never answered the 800 number, proving disabled or not disabled is not a factor in determining where answering the 800 number is an essential function, the fact is the BA job essential functions do not include answering the 800 number period! The hearing decided I received from the AJ is solely based on management's false testimony under oath about what they claim is an essential function and that the Agency does not approve any BA to telework full time which is a proven lie over 20+ qualified disabled BA's have been approved for the RA of telework and over 100+ have been approved under Article 39 Work at Home by Exemption and one non-disabled BA who works 100% remotely not to mention the hundreds of journeyman level BA's (not trainees) who have never answered the 800 number. The OFO decision was a regurgitation of the AJ's decision that was solely based on management's sworn testimony, proven to be a lie based on documents provided to me by Agency's Counsel.  Had the decision maker in this case read the evidence I submitted they would not have upheld the AJ's decision or the OFO prior decision dated February 15, 2019. The sad fact is the EEOC AJ ignored my defense and the evidence that proved I was already working 100% via telework under the pilot telework program about once a week and was receiving successful performance appraisals proving I was performing the essential functions of my job without an effective RA, EEOC AJ does not I was working solely via telework about once a week and does not include in her decision the fact I proved I was receiving successful performance appraisals during the same time period which prove I was performing the essential functions, her failure to even mention the fact evidence provided to her at hearing showed I received successful performances in her decision resulted in her incorrectly determining I was not able to perform the essential functions of my job while working from home even though all the evidence pointed to the fact I was already working 100% from home and was already performing the essential functions of my job.

Per the notice "Decision on Request for Reconsideration" there is no date of issuance just a date the notice was signed June 25, 2019. The notice states on page 1 of the notice:
"EEOC regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or

law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. See 29 C.F.R. § 1614.405(c)."

I provided evidence that clearly shows an erroneous interpretation of material fact and law as well as showing the AJ and OFO decisions had a substantial impact on the policies and practices of the Agency's operations. I provided evidence that shows that the Agency had already made a determination that answering the Agency's toll-free 800 number is not an essential function of the Benefit Authorizer job, and that management perjured themselves at the hearing claiming that Agency's toll-free 800 number  was an essential job function of the Benefit Authorizer job proof of managements perjury has been provided by Agency's Counsel. Agency's Counsel provided two documents proving that the Agency has determined since 2015 Benefit Authorizers job does not require them to answer the Agency's toll-free 800 number to perform their essential functions and that Benefit Authorizers can  perform the essential functions of their job from home 100% via telework five days a week or 40 hour work weeks. I received verbal confirmation that the Benefit Authorizers who were allowed to work from home under Work At Home By Exception and the Benefit Authorizers approved under the Reasonable Accommodations to Work At Home/Telework were excused from answering the Agency's toll-free 800 number proving that there is absolutely no undue hardship as the Agency has successfully approved over 100 Benefit Authorizers for Work At Home By Exception and over 20 Benefit Authorizers under the Reasonable Accommodations to Work At Home/Telework all excused from Agency's toll-free 800 number.

I provided evidence that management also perjured themselves when they claimed that the Benefit Authorizer nine month training program included on how to answer Agency's toll-free 800 number which is not true at all, I provided evidence the training material did not at all touch on answering the Agency's toll-free 800 number. Management's testimony proved that the Teleservice Center a different section of the Agency primary job function is to Agency's toll-free 800 number and not an essential function of the Benefit Authorizer job. Benefit Authorizers are not part of the Teleservice Center but are in operations department of the Agency. The truth is that for a Benefit Authorizer to move from being a trainee to a journeyman level Benefit Authorizer requires training on how process cases and no answer the Agency's toll-free 800 number! I provided evidence that there are journeyman level Benefit Authorizers who do not answer the Agency's toll-free 800 number at all and that they are not disabled.  The evidence I provided proves that the Agency is currently excusing both disabled Benefit Authorizers and none disabled Benefit Authorizers from answering the Agency toll-free 800 number, proving there is absolutely no undue hardship to excuse me from answering the Agency toll-free 800 number too. The evidence proves that the Agency has a long history of providing the Reasonable Accommodation of Work At Home/Telework to Benefit Authorizers, excusing Benefit Authorizers from Agency's toll-free 800 number without hardship. It is also important to note that I provided managements testimony which stated that the decision of who answers the Agency's toll-free 800 number is decided by management proving that it is not an essential function since management can exclude whomever they wish from answering the Agency's toll-free 800 number, in order for a function to be essential all employees have to do it without exception a statement management also made. Given the documented evidence provided by Agency's Counsel "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" that shows clearly in black and white that the Agency's has determined since 2015 the essential functions Benefit Authorizer job do not include answering Agency's toll-free 800 number and that the essential functions Benefit Authorizer job can be performed 100% via telework. A fact that cannot be disputed as the evidence has come from Agency's Counsel. The very fact Agency's Counsel and management lied about the essential job functions of the Benefit Authorizer job to OFO shows that their statements are not trustworthy and that the decision from the OFO should not quote management or statements provided by Agency's Counsel quoting management's sworn testimony since it is clear they lied and contradicted facts provided to me from Agency Council about the Agency's determination on the true essential functions of the Benefit Authorizer job in addition to other documented facts I provided proving the true essential job functions.

The evidence I provided in my last appeal clearly showed that management on multiple occasions lied under oath with impunity, the claims the essential functions of the Benefit Authorizer job included Agency's toll-free 800 number and the fabricated claim that approving my request for the Reasonable Accommodation of Work At Home/Telework would be an undue hardship. The evidence I provided proves

that the prior AJ and OFO decisions ignored the fact I received successful performance appraisals while working 100% from home and did not answer the Agency's toll-free 800 number proving I am a qualified disabled employee and that Agency's toll-free 800 number is not an essential job function of the Benefit Authorizer. I provided documentation from EEO Director Claudia Postell which she signed stating I was found to be a qualified disabled employee per case law "See Kohner v. Dep't of Trans., EEOC Appeal No. 0120110334, 1 (Sept, 14, 2012) (affirming AJ's decision finding complainant was a 'qualified' individual with a disability by virtue of successful performing his job)." Another material fact ignored and missing from notation in the decision signed June 25, 2019 and the prior OFO decision dated February 15, 2019, additional class law to support my successful performance appraisals while working 100% via telework under the pilot telework program are *Lavern B. v. Department of Housing and Urban Development,* EEOC No. 0720130029 (EEOC OFO 02/12/15) and *Latarsha A. v. Federal Energy Regulatory Commission,* EEOC Appeal Nos. 0120123215, 0120131079 (Mar. 15, 2016).

I worked from home under the pilot telework program and management stated numerous times I was not allowed to work via telework as a reasonable accommodations so the claim that the AJ made in her hearing decision "that Complainant's manager temporarily waived these duties when he allowed Complainant to work telework full time pending the resolution of the instant EEO complaint." Is not an accurate representation of the true facts and a complete misrepresentation of the true events and another event showing that the decisions rendered were not accurately portraying the true facts documented in the written record I provided, it is important to note that management did not make those claims we were in negotiations to find an effective RA because the approved RA's management gave me like Liberal Leave did not enable me to return to work full time, and even though the RA of telework full time would have management did not want to provide me the RA I was requesting claiming that they did not have to provide me the RA I requested, and I always responded that I needed an effective RA and telework was the only RA that would make sure that my work area would not be contaminated by coworkers. It makes me wonder where this false narrative came from, as it is not a true representation of the documents facts as they were presented at hearing and in the documents I provided in my appeals.

The statement included in this decision about the telephone equipment needed to answer the 800 number "Such telephone equipment was hard-wired into the Federal building were Complainant worked." Is a false representation of the true facts presented at court and in the written documents I provide as I provided documentation proving there were employees who answered the Agency's 800 number from home a fact management also stated as being true. The AJ's decision that teleworking would not work is based on management's false assertion that answering the Agency's toll-free 800 number is an essential job function of the Benefit Authorizer job and that the Agency does not allow any Benefit Authorizers whether disabled or not to telework beyond the telework pilot program, which is a proven lie see documents provided to me from Agency's Counsel Tina Saladino "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" the documents shows clearly in black and white that the Agency's has determined since 2015 the essential functions Benefit Authorizer job do not include answering Agency's toll-free 800 number and that the essential functions Benefit Authorizer job can be performed 100% via telework. Further had the OFO investigator/decision maker read the document I supplied they would have seen that Debby Ellis testified that there were employees answering the Agency's toll-free 800 number from home! Another discrepancy if material fact misrepresented by the AJ and OFO in prior decisions as well as this decision. Another material fact is that James Dokko had stated under oath that we had not reached the last resort of reassigning me to another job and that he was still working with me to find an effective Reasonable Accommodation that would enable me to continue my work as a Benefit Authorizer. So I was under no obligation to find other jobs.

The AJ's credibility findings of management's witness testimony should not stand as there is substantial countervailing/invalidating evidence that managements assertions where not credible or factual including but not limited to the essential functions of the Benefit Authorizer job included answering the Agency's toll-free 800 number and that it would be an undue hardship to approve my request for full time telework per the documented evidence that the Agency's Council proved me showing the Agency has been approving other qualified disabled Benefit Authorizers to work 100% from home five days a week full time

from home under both Work At Home By Exception and Reasonable Accommodation of Work At Home/Telework all excused from Agency's toll-free 800 number, see documents "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" factual evidence directly from Agency's Counsel proving management lied under oath therefore their original assertions on which the prior rulings were based on are invalid per documents provided by Agency's Council. Therefore the AJ' decision and prior OFO decision need to be overturned and I should receive a favorable decision.

Agency's management and Agency's Council both knew that no one would question their word and any statements they made under oath and in writing to the courts and that the OFO would blindly accept the AJ's decision and not question the AJ's decision, I say this based on my personal experience and the clear evidence to me that the decision makers in this case are just regurgitating what management said was fact as there is no mention of the factual evidence I provided proving I am a known qualified disabled employee who performed the essential job functions of the Benefit Authorizers job without a Reasonable Accommodation while working 100% from home and not answering the 800 number. The evidence provided by Agency's Council "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" proves my case that I should have been approved the Reasonable Accommodation of Work At Home/Telework full time like the 20 other Benefit Authorizers the Agency has already approved.

Had Carlton Hadden truly gone through the documents I provided in support of my request for reconsideration of the OFO decision dated February 15, 2019 he would not have found in the Agency's favor as the AJ and prior OFO decision maker had. I have proven "(1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency."  Because the documented evidence from Agency's Counsel in the documents labeled "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" prove Benefit Authorizers can perform the full essential functions of their job from home full time via 100% telework five days a week without answering the Agency's toll-free 800 number. The evidence I provided proved that there are both disabled Benefit Authorizers and non-disabled Benefit Authorizers who are excused from answering the Agency's toll-free 800 number proof it is not an essential function, the evidence also shows that managers decide who does and does not answer the phones which further proves it is not essential if management can easily transfer the work around.

I make this appeal to the OFO decision signed June 25, 2019 made by Carlton Hadden based on cold hard facts proving unequivocally that the Agency can approve my request for the Reasonable Accommodation of Work At Home/Telework as they have provided over 20 other Benefit Authorizers with the Reasonable Accommodation of Work At Home/Telework excusing them from Agency's toll-free 800 number and could have return me to work full time. The Agency has already approved over 20 Benefit Authorizers Reasonable Accommodations to Work At Home/Telework excusing them from Agency's toll-free 800 number and also provided over 100 Benefit Authorizers approval under Work At Home By Exception also excusing them from Agency's toll-free 800 number. The Agency had determined that approving Benefit Authorizers for both Work At Home By Exception and Reasonable Accommodations to Work At Home/Telework excusing them from Agency's toll-free 800 number would not remove an essential job function and that the Benefit Authorizer job could be performed from home 100% via telework without any hardship. There is no legal reason the same Reasonable Accommodation of Work At Home/Telework could not have been given to me as I was a known qualified disabled employee based on my successful performance appraisals, per the document signed by Claudia Postell dated January 30, 2019 that I submitted as evidence, the issue with the decision is that they ignore the fact the Agency refused to provide me with an RA and left the issue of where the Agency should have provided me an RA to be processed under a different EEOC case see foot note and had they taking Agency's refusal to effectively accommodate me the decision would have been different.  Carlton Hadden decision maker in this case just regurgitated information stated in the prior decisions and he clearly did not do his due diligence and read the documents I supplied which proved management lied under oath and that Agency's Counsel was pushing management's false narrative that the answering the Agency's toll-free number was an essential function Benefit Authorizer and that the Agency could not approve a qualified

disabled Benefit Authorizer the Reasonable Accommodations of to Work At Home/Telework even though Agency's Counsel had in hand evidence that was a bold face lie per document's Agency's Counsel provided me "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" prove Benefit Authorizers can perform the full essential functions of their job from home full time via 100% telework five days a week without answering the Agency's toll-free 800 number. Agency's management willfully lied under oath with impunity and Agency's Counsel has also acted in bad faith against the courts and OFO by withholding crucial information that proved Management lied under oath and wrongfully refused to provide me with the effective Reasonable Accommodations to Work At Home/Telework causing me extreme undue hardship causing me extreme physical and financial undue hardship without a lawful reason. Agency's management and Counsel purposely withheld the undisputed fact that the Agency had already determined that the Benefit Authorizer's job could be done from home 100% via telework and that excusing a Benefit Authorizer from answering the Agency's toll-free 800 number would not remove an essential job function even though the information was within their possession. I can only conclude that Agency's Counsel actions can only be described as being done willfully and intentionally to protect management and the Agency from being held accountable for their misconduct, providing false testimony under oath, refusing to abide by Reasonable Accommodation laws, unlawfully withholding an effective Reasonable Accommodation from a known qualified disable employee to further disability discrimination, harassment, hostile work environment, retaliation for filing EEO complaints, bad faith actions, abuse of authority and complete disregard for the laws protecting disabled employees. The AJ's decision was based solely on management's testimony made under oath, apparently AJ believed that the agency management and Agency's Council would not lie under oath and apparently the OFO decision maker also believed the Agency would not lie as well as the OFO decision was also based solely on managements sworn testimony which was proven to be a lie by documents provided by Agency's Council here and attached, a fact that would have come to light if the investigator/decision maker in this OFO decision had done their due diligence and looked at all the facts submitted as evidence and would have found that Agency's management and Agency's Council continued to lied through this case. The facts and evidence of facts I provided in my appeals proved management lied under oath and that management's testimony should not be used as the basis for the decision in my case. I am again providing undisputable evidence that management lied under oath and even though Agency's Counsel was aware management claims were lies Agency's Counsel chose to continue pushed management's lie about the essential functions of the Benefit Authorizer job knowing it was a bold face lie. Had the anyone done their due diligence in my case and read the evidence I provided in my appeals I would have won my case because they would have seen that the Agency was already approving Benefit Authorizers for the Reasonable Accommodations of Work At Home/Telework and Work At Home By Exception excusing them from Agency's toll-free 800 number because the Agency knew excusing Benefit Authorizers from answering the 800 number would not remove an essential job function and that the Benefit Authorizer job could be performed from home 100% via telework without any hardship.

Agency's Counsel has broken the American Bar Association Rule 3.3: Candor Toward the Tribunal and Rule 3.4: Fairness to Opposing Party & Counsel  and Rule 4.1: Truthfulness in Statements to Others by withholding the document's "Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Request – Telework RA.pdf" and "Agency Response to Tom Discovery Part 3 – SF BA Information.pdf" that proves the Agency was aware Benefit Authorizers can perform the full essential functions of their job from home full time via 100% telework five days a week without answering the Agency's toll-free 800 number information she would have had available when she prepared the Agency's response to my request for reconsideration of the OFO decision dated February 15, 2019. The fact that both the OFO decision dated February 15, 2019 and this OFO decision dated June 25, 2019 were made by the same Compliance and Control Division representative Ms. Jones is troubling as it denied me the opportunity to have a new pair of eyes look at my case and determine if Ms. Jones' decision was proper, the case should have been assigned to another representative so that all facts and factual evidence I provided would have been given the proper weight/merit/credit it deserved, should have definitely resulted in a different decision in my favor as the evidence I provided proved unequivocally that the decisions were based on management's false testimony under oath.

There are checks and balances in place to make sure that the decision maker of the first decision would not review the request for appeal to ensure a fair and equitable review of all the evidence provided and to prevent the an employee from a bias decision upholding an incorrect decision they previously made. Unfortunately for me this important step was not followed as the original OFO decision maker Ms. Jones whom rendered the February 15, 2019 OFO decision was also assigned the job of processing my request for reconsideration of her original OFO decision to uphold the AJ's decision. Ms. Jones processed my request for reconsideration and choose to uphold her original decision in this the OFO decision dated June 25, 2019 made by Carlton Hadden. Even though Carlton Hadden was presented additional unequivocally evidence managements sworn testimony was a lie see documents Agency's Council provided here in attached he also regurgitated what the EEOC AJ, Agency's Counsel and OFO investigator Ms. Jones stated in their briefs and decisions completely leaving out my responses and evidence, not once was my evidence noted or my defense noted because if it had no decision in favor of the Agency could have been made. In my appeal of Ms. Jones' original OFO decision dated February 15, 2019 I reported that she failed to look at the evidence I provided proving management lied under oath, the evidence management lied under oath was provided in each of my appeals and prior to both OFO decisions another material fact missing is the fact I received successful performance appraisals I received while working 100% from home under the Telework Pilot Program not because of a Reasonable Accommodation, Mr Carlton Hadden decision dated June 25, 2019 was just as bias as Ms. Jone's decision and he just regurgitated what Ms. Jone's stated leading me to believe he never looked at the evidence either. My successful performance appraisals throughout my career proving I am a qualified disabled employee and that because I was working full time from home 100% via Telework without a Reasonable Accommodation proved I was performing the essential job functions of the Benefit Authorizer job without a Reasonable Accommodation. None of those facts were noted in either of Ms. Jones' decisions for the OFO decision dated February 15, 2019 or her more recent decision dated June 25, 2019 by Carlton Hadden. Neither of them obviously didn't take into consideration any of the prior or new evidence I provided, which would in fact would render a different outcome, based on the evidence that Agency Counsel was forced to provide me, this evidence provides proof that Agency counsel had conceal evidence and facts, that management blatant lied under oath, had she done so she most definitely would rendered an unbiased decision in my favor. I believe that someone should notified that evidence was concealing unlawfully by Agency's Council.

My case shows the fraud waste and abuse of authority that has occurred in my case and that regardless of the undisputed facts that I provided to the OFO proving management lied under oath in their claims that answering the Agency's toll-free 800 number was an essential function of the Benefit Authorizers job and the claim that approving my request for the Reasonable Accommodation of Work At Home/Telework full time would cause an undue hardship Ms. Jones ignored the factual evidence I provided her and has found yet again in the Agency's favor even though Agency's Counsel provided the crucial evidence proving that management lied under oath about the Benefit Authorizers true essential job functions and lied when they claimed the Agency did not approve Benefit Authorizers under the Reasonable Accommodation of Work At Home/Telework full time 5 days a week. Evidence provided by Agency's Council prove managements assertions made under oath at the 2017 hearing were lies see documents Agency's Counsel provided me proving the Agency approved over 20+ qualified disabled Benefits Authorizers with the Reasonable Accommodations of telework since 2016 and over 100 disabled benefit Authorizers approval under Article 39 Work at Home by Exemption since 2015 and one (1) non-disabled BA who works 100% remotely proving that management and Agency's Counsel would have known in 2017 when the hearing was being held that the Agency had determined that the not only could the Benefit Authorizer job be performed 100% from home but also that answering the 800 number is not an essential function of the job. I was not asking the Agency to change the essential job function of the Benefit Authorizer job I was asking the Agency to follow Reasonable Accommodations Policy as they have for over 20+ other qualified disabled Benefit Authorizes and also approve me for the Reasonable Accommodation of telework so I too could work full time like my co-workers who are both disabled and not disabled.

Agency's Council response to the appeal my attorney made to the AJ's April 7, 2017 hearing decision continued to push managements lies as factual evidence despite her unequivocally knowledge that the Agency's claims answering the 800 number was an essential job function was false and that the Agency

unlawful refusal to provide me with effective Reasonable Accommodation me were based on known lies. Agency's Council proved the evidence that the Agency excused Benefit Authorizers both qualified disabled employees under Reasonable Accommodations and other Benefit Authorizers under the Work At Home By Exception and non-disabled BA's who have never answered the 800 number. I ask that based on the overwhelming evidence proving that since 2015 the Agency has determined that a disabled Benefit Authorizer can work from home full time five days a week under Article 39 Work At Home by exemption and that since 2016 the Agency has approved Qualified disabled Benefit Authorizers the Reasonable Accommodations of telework five days a week proves that the Agency is more than capable of having also approved my request for Reasonable Accommodations of telework without altering the essential functions of the Benefit Authorizer job and that the Agency failed to effectively accommodate me without a lawful reason. See the documents provided by Agency's Council on the Benefit Authorizers approved to telework under the Pilot Program, as a Reasonable Accommodation and under Article 39. The evidence proves the AJ's decision was based on a false assertions made by Agency's management testimony under oath and Agency's Counsel actions by not only misrepresenting facts but also willfully withheld evidence that proved the Agency could have provided me the Reasonable Accommodations of telework I was requesting without any harm to the Agency or my ability to perform the essential functions of my job. The EEOC AJ's decision needs to be overturned and I should be granted a fully favorable decision and be approved for the Reasonable Accommodation of Work At Home/Telework full time five days a week without exception, training and other work be done 100% via Telework and that I be made whole and receive pain and suffering, a new clean laptop handled by only employees who are fragrance and chemical free (the imaging of the laptop to be set up by a fragrance and chemical free employee in an area free of fragrance and chemicals management said this was possible and would not be a hardship), back pay, complete restoration of leave and removal of all advanced leave, to not have the same management ever again and that the other remedies I have previously listed also be approved.

Thank you,
Jennifer Tom

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| Jennifer Tom | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.   2019002750 |
| Andrew Saul, Commissioner of Social Security Admi | ) | |
| *Defendant* | ) | |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:   Andrew Saul, Commissioner of Social Security Administration
    *(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within    30    days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent.   Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:    09/23/2019

*Signature of the attorney or unrepresented party*

Jennifer Tom
*Printed name*

2101 Mangrove Court
Antioch, CA 94509
*Address*

jmtom3@yahoo.com
*E-mail address*

(925)698-5028
*Telephone number*

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | |
|---|---|
| Jennifer Tom | ) |
| *Plaintiff* | ) |
| v. | ) |
| Andrew Saul, Commissioner of Social Security Admi | ) |
| *Defendant* | ) |

Civil Action No.   2019002750

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To:  Andrew Saul, Commissioner of Social Security Administration
　　*(Name of the defendant or - if the defendant is a corporation, partnership, or association - an officer or agent authorized to receive service)*

### Why are you getting this?

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within __30__ days *(give at least 30 days, or at least 60 days if the defendant is outside any judicial district of the United States)* from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

### What happens next?

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date:   09/23/2019

_____
*Signature of the attorney or unrepresented party*

Jennifer Tom
*Printed name*

2101 Mangrove Court
Antioch, CA 94509
*Address*

jmtom3@yahoo.com
*E-mail address*

(925)698-5028
*Telephone number*



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Washington, D.C. 20507

July 26, 2019

Ms. Jennifer M. Tom
2101 Mangrove Court,
Antioch, California 94509

Dear Ms. Tom:

This is in response to your recent inquiry to President Donald Trump concerning your complaints of discrimination against the Social Security Administration (SSA). President Trump has asked the Equal Employment Opportunity Commission (EEOC) to respond directly to you.

The Equal Employment Opportunity Commission (EEOC) is responsible for enforcing laws which prohibit discrimination against employees and applicants for employment with federal agencies based on race, color, religion, sex, national origin, age (40 and over), disability, genetic information, and reprisal. Claims of discrimination must be pursued by following the specific procedures in EEOC regulations, found at 29 C.F.R. Part 1614. These regulations apply to all federal sector complaints pending at any stage in the administrative process. You may review the regulations and EEOC Management Directive EEO-MD 110 on EEOCs web site at www.eeoc.gov.

The EEOC records reveal that on February 15, 2019, the EEOC issued a decision on appeal (EEOC Appeal No. 0120172221) (Agency No. SF-14-0624-SSA) affirming the agency's finding of no discrimination. On March 4, 2019, you filed a request for reconsideration (EEOC Request No. 2019002750). Currently, your request for reconsideration is being processed, but no decision has yet been issued. In addition, we note that on April 13, 2019, you filed a second appeal regarding Agency No. SF-18-0921-SSA, which was docketed as EEOC Appeal No. 20190000982. Also, your appeal is being processed, but not decision has yet been issued. Unfortunately, it is difficult to predict exactly when the EEOC will issue the decisions because of the large volume of appeals the EEOC receives and the varying complexity of each case. The EEOC puts forth every effort to process cases as expeditiously as possible. Please be assured that we will process your complaints in a fair and equitable manner.

If you desire additional information on the status of your complaints later, you can contact directly the Office of Federal Operations (OFO) EEOC via email at ofo.eeoc@eeoc.gov.

Ms. Jennifer M. Tom
Page Two

We hope this information is helpful to you.

Sincerely,

Patricia Crawford, Director
Office of Legislative Affairs



U.S. POSTAGE ⟫ PITNEY BOWES

$ 000.50

ZIP 20507
02.4W
0000361777 JUL 26 201

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
OCLA
Washington, D.C. 20507

*Official Business*

RE: Reconsideration for case Request No. 2019002750 Appeal No. 0120172221  Hearing No. 550-2015-00104X Agency No. SF-14-0624-SSA

From:  OFOEEOC (OFO.EEOC@EEOC.GOV)

To:      jmtom3@yahoo.com

Date:  Wednesday, July 31, 2019, 10:31 AM PDT

Ms. Tom,

It appears that the response to the correspondence was prepared and issued while a decision was being issued on your request.  Attached is a copy of the decision on Request No. 2019002750, which was written and reviewed by different staff than worked on your prior appeal.  The password to open the decision will be sent in a separate email.

Attorney of the Day

Office of Federal Operations

EEOC

**From:** jennifer tom <jmtom3@yahoo.com>
**Sent:** Tuesday, July 30, 2019 8:41 PM
**To:** OFOEEOC <OFO.EEOC@EEOC.GOV>; jennifer tom <jmtom3@yahoo.com>
**Subject:** Reconsideration for case Request No. 2019002750 Appeal No. 0120172221  Hearing No. 550-2015-00104X Agency No. SF-14-0624-SSA

I received a notice in the mail today July 30, 2019 informing me, that my request for reconsideration under case: Request No. 2019002750, Appeal No. 0120172221,  Hearing No. 550-2015-00104X, Agency No. SF-14-0624-SSA is still pending and that no decision was made.

Therefore, I can assume that per this letter dated July 26, 2019 received by me to day July 30, 2019, that my request for reconsideration filed March 2019 is still being processed and that all the evidence I have provided will be given the proper weight and will no longer be ignored as it has been to date. I was informed by the EEOC AJ who rendered the original decision in this case Hearing No. 550-2015-00104X, Agency No. SF-14-0624-SSA during a conference call with Agency's Counsel, myself and my Attorney that the AJ rendered her decision solely based on management's testimony alone and not on the evidence I provided proving management lied about not being able to approve my request for the Reasonable Accommodations of telework.

9/23/2019     Yahoo Mail - RE: Reconsideration for case Request No. 2019002750 Appeal No. 0120172221   Hearing No. 550-2015-00104X Agency N...

Case 4:19-cv-06322-JST   Document 1   Filed 09/27/19   Page 18 of 58

I am requesting confirmation that to date July 30, 2019 my request for reconsideration is still being processed. I am also requesting confirmation that the person who is processing the reconsideration is a different employee than the one who made the original decision at the appeal stage with the EEOC Appeal No. 0120172221, Hearing No. 550-2015-00104X, Agency No. SF-14-0624-SSA as it is my understanding that the employee who processes a request for reconsideration cannot be the same employee who rendered the original decision to ensure a fair and complete reconsideration decision is made and to ensure that all the evidence is taken into consideration and not overlooked a second time and to make sure evidence of management's false testimony is not overlooked a second time. The reason I am appealing the AJ's decision is because management provided false testimony under oath, it is management's false testimony that the EEOC AJ relied on when she rendered her decision according to the conference call with the EEOC AJ, Agency's Counsel, my attorney and me earlier this year. Management's false testimony included the claim NO Benefit Authorizer was approved the Reasonable Accommodation of Telework which is a lie proven by the evidence Agency's Counsel provided me and included in this email.

I also want to make sure that the evidence I provided showing that the Social Security Administration has been providing the employees with the job of Benefit Authorizers approval for the Reasonable Accommodations of Telework since at least since 2016. I have included that evidence in this email just in case. I am aware of Benefit Authorizers have been approved for the Reasonable Accommodations of Telework as far back as the late 1990's to early 2000's. The evidence also shows that there are Benefit Authorizers are approved under Article 39 Work At Home By Exception as far back as 2015 approved to work five days a week and 1 Benefit Authorizer is working as a long term virtual detail, proving I could have been approved to telework as a Reasonable Accommodation and that management had no lawful reason for refusing to provide me with the Reasonable Accommodation of Telework, as the Agency has a history of providing Reasonable Accommodations of Telework as a Reasonable Accommodation for Benefit Authorizers for years, which I can only conclude proves that I was denied the Reasonable Accommodation of Telework due to retaliation and disability discrimination for filing EEO complaints.

I would also like to make sure that the correct case number for the second EEO case mentioned is actually SF-18-0924 is the EEOC case number connected to docket EEO Appeal No. 20190000982 and not **SF-18-0921.** I believe it was just a typo in this notice, I do not have an EEO case that ends in 0921.

I intend to keep President Trump appraised of any progress in these cases, as I have been placed in a dire need and unfair situation due to management's lies under oath. I need the evidence I have provided proving management lied under

Case 4:19-cv-06322-JST   Document 1   Filed 09/27/19   Page 19 of 58

oath to be taken into account and for a fair and complete decision in these cases to be rendered, based on factual evidence and not based on management's false testimony made under oath.

Thank you for your help,

Jennifer

 Decision.2019002750.pdf
82.6kB



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P.O. Box 77960**
**Washington, DC 20013**

Jennifer Tom, a/k/a
Lavonia M.,[1]
Complainant,

v.

Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration,
Agency.

Request No. 2019002750

Appeal No. 0120172221

Hearing No. 550-2015-00104X

Agency No. SF140624SSA

<u>DECISION ON REQUEST FOR RECONSIDERATION</u>

Complainant timely requested that the Equal Employment Opportunity Commission (EEOC or Commission) reconsider its decision in <u>Lavonia M. v. Soc. Security Admin.</u>, EEOC Appeal No. 0120172221 (Feb. 15, 2019). EEOC regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision issued pursuant to 29 C.F.R. § 1614.405(a), where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency. <u>See</u> 29 C.F.R. § 1614.405(c).

During the period at issue, Complainant worked as a Benefits Authorizer, GS-9, within Module 10 of the Agency's Western Program Service Center in Richmond, California.

On August 6, 2014, Complainant filed a formal EEO complaint. Complainant claimed that the Agency discriminated against her and subjected her to a hostile work environment based on disability (sensitivity to fragrances and other chemicals) when:

---

[1] This case has been randomly assigned a pseudonym which will replace Complainant's name when the decision is published to non-parties and the Commission's website.

1. since May 12, 2014, various management officials had been denying Complainant reasonable accommodation requests for a fragrance-free work environment; and

2. Between December 2013 and July 2014, various management officials had subjected Complainant to a hostile work environment because of her physical disability (chemical sensitivity) when:

   a. since December 2013, Complainant's co-workers continued to spray perfume in the office despite having knowledge of her allergic reaction to scents;

   b. on May 30, 2014, management informed Complainant that she had to move her desk, but did not take any action to prevent her co-worker from spraying perfume in Complainant's presence;

   c. on June 3, 2014, Complainant's manager willingly wore perfume during a meeting, which caused Complainant to have an allergic reaction; and

   d. on July 23, 2014, Complainant was forced to move to another location due to irritants emanating from the floor and permeating the room.

On January 18 and 19, 2017, the assigned EEOC Administrative Judge ("AJ") held a hearing where five witnesses, including Complainant testified. On April 7, 2017, the AJ issued a decision in favor of the Agency finding no discrimination. The AJ determined that documentation supported that Complainant had a disability. The AJ, however, found that Complainant's request for full-time telework would cause an undue hardship on the Agency because Complainant would not have been able to perform an essential function of her job. The AJ explained that Complainant's position as a GS-9 Benefits Authorizer required that she perform Spike duties, which consisted of answering the Agency's toll-free 800 number when the Agency had an increased number of calls. The AJ determined that these duties could not be performed outside of the workplace because these phone calls required special, proprietary telephone equipment. Such telephone equipment was hard-wired into the Federal building where Complainant worked. The AJ acknowledged that Complainant's manager temporarily waived these duties when he allowed Complainant to telework fulltime pending the resolution of the instant EEO complaint. The AJ clarified, however, that Spike duties remained an essential function of Complainant's position. Regarding a request for reassignment, the AJ determined that Complainant had established that there were no vacancies during the relevant time period into which she could have been reassigned.

On May 8, 2017, the Agency issued a final order affirming the AJ's decision. In EEOC Appeal No. 0120172221, we affirmed the AJ's decision and the Agency's final order. The decision concluded that the evidence of record established that Spike duties were an essential function of Complainant's position and she could not perform these duties from an alternate location.

The decision further determined that Complainant had not shown that there were other funded positions available to which she could have been reassigned. Therefore, the decision concluded Complainant failed to demonstrate that the Agency violated the Rehabilitation Act.

In the instant request for reconsideration, Complainant submits a brief expressing disagreement with the appellate decision and reiterates arguments previously made on appeal. The Commission emphasizes that a request for reconsideration is not a second appeal to the Commission. Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), Chap. 9 § VI.A (Aug. 5, 2015); see, e.g., Lopez v. Dep't of Agric., EEOC Request No. 0520070736 (Aug. 20, 2007). Rather, a reconsideration request is an opportunity to demonstrate that the appellate decision involved a clearly erroneous interpretation of material fact or law, or will have a substantial impact on the policies, practices, or operations of the Agency. Complainant has not done so here.

After reviewing the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(c), and it is the decision of the Commission to deny the request. The decision in EEOC Appeal No. 0120172221 remains the Commission's decision. There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0610)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision. You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official Agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z0815)

If you want to file a civil action but cannot pay the fees, costs, or security to do so, you may request permission from the court to proceed with the civil action without paying these fees or costs. Similarly, if you cannot afford an attorney to represent you in the civil action, you may request the court to appoint an attorney for you. **You must submit the requests for waiver of court costs or appointment of an attorney directly to the court, not the Commission. The**

4                                                    2019002750

court has the sole discretion to grant or deny these types of requests. Such requests do not alter the time limits for filing a civil action (please read the paragraph titled Complainant's Right to File a Civil Action for the specific time limits).

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations


June 25, 2019
Date

9/23/2019    Yahoo Mail - Re: Official Request Decision Be Rescinded As The Decision Is Based on False Testimony From Management Evidence He...

Case 4:19-cv-06322-JST   Document 1   Filed 09/27/19   Page 24 of 58

Re: Official Request Decision Be Rescinded As The Decision Is Based on False Testimony From Management Evidence Here in Provided By Agency's Council See Documents

From:  jennifer tom (jmtom3@yahoo.com)

To:    carlton.hadden@eeoc.gov; ofo.eeoc@eeoc.gov; jmtom3@yahoo.com

Date:  Tuesday, July 2, 2019, 11:15 PM PDT

I am resending this because the email I had below was not a valid email for you. I am now using carlton.hadden@eeoc.gov.

Thank you for your help,
Jennifer

On Tuesday, July 2, 2019, 10:57:06 PM PDT, jennifer tom <jmtom3@yahoo.com> wrote:

Mr. Carlton Hadden
Director Office of Federal Operations
U.S. Equal Employment Opportunity Commission
chadden@eeoc.gov

I am requesting that you rescind the decision signed June 25, 2019. The full explanation for my request for this decision to be rescinded is included in the word document, please see the PDF's from Agency's Counsel proving management's false testimony and the AJ's

9/23/2019      Yahoo Mail - Re: Official Request Decision Be Rescinded As The Decision Is Based on False Testimony From Management Evidence He…

Case 4:19-cv-06322-JST   Document 1   Filed 09/27/19   Page 25 of 58

decision should be overturned. I request that I be sent a complete copy of my case including all documents used to render the decisions, if possible via CD and please have a fragrance and chemical free employee prepare the CD.

Thank you for your time,
Jennifer Tom

 Final appeal to OFO decision signed 06-25-2019 - done 7-02-2019.docx
120kB

 Tom.SF.0752.19.0286.I.1_RFP 6 Agency Supp. Response - Telework RA.pdf
159.4kB

 Agency Response to Tom Discovery Part 3 - SF BA Information.pdf
118.9kB

 Final Agency Denial on SF-14-0624 signed 6-25-2019 received 6-28-2019.pdf
2.1MB

 Appeal Decision SF-14-0624-SSA hear no 550-2015-00104X for Agency received 2-19-2019.pdf
4.6MB

DEBORAH LEE STACHEL
Regional Chief Counsel
TINA R. SALADINO
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
160 Spear Street, Suite 800
San Francisco, CA 94105-1545
Telephone: (415) 977-8991 (Saladino)
Facsimile: (415) 744-0134
Agency Representatives

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
## WESTERN REGIONAL OFFICE

| | | |
|---|---|---|
| JENNIFER TOM, | ) | DOCKET NO.: SF-0752-19-0286-I-1 |
| Appellant, | ) | DATE: May 17, 2019 |
| v. | ) | AGENCY'S RESPONSE TO |
| SOCIAL SECURITY ADMINISTRATION, | ) | APPELLANT'S REQUEST FOR PRODUCTION # 6 AS AMENDED IN |
| Agency. | ) | THE BOARD'S APRIL 25, 2019 ORDER |

Pursuant to 5 C.F.R. § 1201.73, the Social Security Administration (SSA or agency)

provides the following information in response to Appellant's request for production #6 as

amended by the Board's April 25, 2019 Order:

<u>Atlanta Region</u>

Below are the Atlanta Region Program Service Center Benefit Authorizers (BAs) who telework

for any reason from January 2014 to present.

<u>Pilot Program</u>

- 171 BAs telework under the Pilot Program.
- All 171 BAs telework 1 day per week.
- 12 out of 171 BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

<u>2012 AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)</u>
- 22 BAs telework(ed) under WAHBE.
- Under WAHBE the BAs telework(ed) as follows:

  - Atlanta BA #1 04/30/18 - 07/09/18
  - Atlanta BA #2 03/02/19 - 09/30/19
  - Atlanta BA #3 10/02/18 - 11/19/18
  - Atlanta BA #4 11/28/18 - 12/18/18
  - Atlanta BA #5 02/07/19 – 04/04/19
  - Atlanta BA #6 06/18/18 – 08/17/18
  - Atlanta BA #7 07/11/18 – 12/15/18
  - Atlanta BA #8 03/28/17 – 01/22/18
  - Atlanta BA #9 04/15/19 – 06/22/19
  - Atlanta BA #10 04/02/18 – 04/13/18
  - Atlanta BA #11 09/03/18 – 05/05/19
  - Atlanta BA #12 02/21/18 – 05/16/18
  - Atlanta BA #13 04/10/19 – 04/23/19
  - Atlanta BA #14 02/04/19 – 02/28/19
  - Atlanta BA #15 08/08/18 – 09/09/18
  - Atlanta BA #16 07/20/18 – 09/11/18
  - Atlanta BA #17 07/24/18 – 08/08/18
  - Atlanta BA #18 08/31/17 – 10/02/17
  - Atlanta BA #19 02/28/18 – 04/12/18
  - Atlanta BA #20 06/19/18 – 07/02/18
  - Atlanta BA #21 04/04/19 – 07/22/19
  - Atlanta BA #22 11/07/18 – 11/19/18

- 22 of the 22 BAs who telework(ed) under WAHBE, teleworked 5 days each week.
- 2 of the 22 BAs who telework(ed) under WAHBE have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- 1 of the 22 BAs who telework(ed) under WAHBE also telework(ed) under the Pilot Program. This BA also had prior EEO activity.

<u>Reasonable Accommodation (RA)</u>

- 3 BAs telework(ed) as an RA.
- The BAs telework(ed) as an RA as follows:
  - Atlanta BA#1 (RA) 02/05/18 – 05/05/18
  - Atlanta BA#2 (RA) 01/23/19 – 06/23/19
  - Atlanta BA#3 (RA) 05/15/17 – Present
- 3 out of the 3 BAs who telework(ed) as an RA, teleworked 5 days each week.
- 1 of the 3 BAs who telework(ed) as an RA, also telework(ed) under WAHBE.
  - This BA is included in the WAHBE count shown above.
  - This BA also had prior EEO activity.
- None of the 3 BAs who telework(ed) as an RA also teleworked under the Pilot Program.

## Chicago Region

Below are the Chicago Region Program Service Center Benefit Authorizers (BAs) who telework

for any reason from January 2014 to present.

Pilot Program
- 112 BAs telework under the Pilot Program.
- All 112 BAs telework 1 day per week.
  - There was no time period when Chicago BAs teleworked 2 days per week
- 5 out of 112 BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

2012 AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)
- 6 BAs teleworked under WAHBE
- Under WAHBE, the BAs telework(ed) as follows:
  - Chicago BA #1 03/2019 – 05/20/19
  - Chicago BA #2 07/20/18 – 05/27/19
  - Chicago BA #3 03/26/18 – 08/12/19
  - Chicago BA #4 01/27/17 – 07/18/19
  - Chicago BA #5 02/15/17 – 07/31/19
  - Chicago BA #6 04/01/19 – 05/12/19
- None of the BAs who telework(ed) under WAHBE have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- 3 of the 6 BAs who telework(ed) under WAHBE also telework under the Pilot Program.

Reasonable Accommodation (RA)
- 1 BA telework(ed) as an RA.
- The BA telework(ed) as an RA as follows:
  - Chicago BA #1 04/29/19 – present (re-evaluate 04/29/20)
- This BA did have prior EEO activity wherein they filed an informal and/or formal complaint.
- This BA also teleworked under the Pilot Program.
- This BA did not telework under WAHBE.

/

**Kansas City Region**

Below are the Kansas City Region Program Service Center Benefit Authorizers (BAs) who

telework for any reason from January 2014 to present.

Pilot Program
- 225 BAs telework under the Pilot Program.
- 103 out of the 225 BAs telework 2 days per week
  - 10 of the 103 BAs that telework 2 days per week have prior EEO activity wherein they filed informal and/or formal EEO complaints.
  - 1 of these BAs is actually a long term virtual detail
- 122 out of the 225 BAs telework 1 day per week
  - 3 of the 122 BAs that telework 1 day per week have prior EEO activity wherein they filed informal and/or formal EEO complaints.

Note:
- The 225 count under the Pilot Project includes BAs who no longer telework due to promotion, withdrawal/removal or separation.
- BAs in this region did not telework until August 2015
- Beginning in September 2016, this region held quarterly solicitations for participation in the pilot. Thereafter, the region had semiannual backfills.
- From August 13, 2017 through October 13, 2017, BAs with at least 120 days of teleworking work eligible to telework a second day.

2012 AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)
- 22 BAs teleworked under WAHBE
- Under WAHBE, the BAs telework(ed) as follows:
  - Kansas City BA #1 05/08/17 – 06/19/17
  - Kansas City BA #2 06/09/17
  - Kansas City BA #3 06/30/17 – 07/28/17
  - Kansas City BA #4 07/06/18 – 09/08/17
  - Kansas City BA #5 11/02/17 – 12/05/17
  - Kansas City BA #6 01/22/18 – 02/09/18
  - Kansas City BA #7 01/29/18 – 04/05/18
  - Kansas City BA #8 02/01/18 – 08/31/18
  - Kansas City BA #9 03/05/18 – 03/23/18
  - Kansas City BA #10 04/09/18 – 04/18/18
  - Kansas City BA #11 06/08/18 – 07/20/18
  - Kansas City BA #12 06/11/19
  - Kansas City BA #13 06/14/18 – 07/06/18
  - Kansas City BA #14 08/16/18 – 08/29/18
  - Kansas City BA #15 08/20/18 – 09/03/18
  - Kansas City BA #16 08/20/18 – 09/14/18
  - Kansas City BA #17 08/27/18 – 09/07/18
  - Kansas City BA #18 09/12/18 – 10/26/18

- o Kansas City BA #19 12/26/18 – 05/31/19
- o Kansas City BA #20 02/06/19 – 03/01/19
- o Kansas City BA #21 03/04/19 – 04/19/19
- o Kansas City BA #22 05/19/19 – 05/25/19
- 4 out of the 22 BAs who telework(ed) under WAHBE have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- All of the of the # BAs who telework(ed) under WAHBE teleworked 5 days per week
- All of the BAs who telework(ed) under WAHBE also telework under the Pilot Program. They are included in the 225 count.

Reasonable Accommodation (RA)
- 2 BAs telework(ed) as an RA.
- The BAs telework(ed) as an RA as follows:
  - o Kansas City BA #1 (RA) (effective 03/21/18 during inclement weather)
  - o Kansas City BA #2 (RA) (effective 06/07/18 two days per week floating; 05/20/19 Tuesday, Wednesday, and Thursday)
- 1 out of the 2 BAs who telework as an RA have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- All of the BAs who telework as an RA also telework under the Pilot Program. They are included in the 225 count.
- 0 of the 2 BAs who telework(ed) as an RA, also telework(ed) under WAHBE.

### New York Region

Below are the New York Region Program Service Center Benefit Authorizers (BAs) who

telework for any reason from January 2014 to present.

Pilot Program
- 123 BAs telework under the Pilot Program.
  - 3 out of the 123 BAs telework 2 days per week.
  - 120 out of the123 BAs telework 1 day per week.
- None of the 123 BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

2012 AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)
- 18 BAs teleworked under WAHBE
- Under WAHBE, the BAs telework(ed) as follows:
  - New York BA #1 08/24/17 – 09/21/17
  - New York BA #2 03/31/17 – 09/06/17
  - New York BA #3 02/13/17 – 02/24/17
  - New York BA #4 01/08/18 – 02/07/18
  - New York BA #5 06/11/18 – 07/16/18
  - New York BA #6 04/03/17 – 04/06/17
  - New York BA #7 12/12/16 – 08/31/17
  - New York BA #8 08/29/18 – 01/15/19
  - New York BA #9 06/14/17 – 07/17/17
  - New York BA #10 05/15/17 – 06/02/17
  - New York BA #11 06/18/18 – 08/06/18
  - New York BA #12 03/13/19 – 04/09/19
  - New York BA #13 07/05/18 – 05/03/19
  - New York BA #14 12/10/18 – 12/21/18
  - New York BA #15 09/10/18 – 09/28/18
  - New York BA #16 02/13/18 – 03/27/18
  - New York BA #17 07/13/16 – 08/18/16 and 10/31/16 – 01/17/17
  - New York BA #18 12/07/15 – 05/16/16
- None of the BAs who telework(ed) under WAHBE have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- All of the of the BAs who telework(ed) under WAHBE teleworked 5 days per week
- All of the of the BAs who telework(ed) under WAHBE also telework under the Pilot Program. They are included in the 123 count.

Reasonable Accommodation (RA)
- None of the New York BAs telework(ed) as an RA.

### Philadelphia Region

Below are the Philadelphia Region Program Service Center Benefit Authorizers (BAs) who

telework for any reason from January 2014 to present.

### Pilot Program

- 133 Philadelphia BAs telework under the Pilot Program.
- All 133 Philadelphia BAs telework 1 day per week.
- 14 out of 133 Philadelphia BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

### 2012 AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)

- 6 Philadelphia BAs teleworked under WAHBE.
  - 5 Philadelphia BAs teleworked 5 days per week.
  - 1 Philadelphia BA teleworked 2 days per week.
- Under WAHBE, the BAs telework(ed) as follows:
  - Philadelphia BA #1 04/09/18 – 04/17/18
  - Philadelphia BA #2 02/20/19 – 03/22/19
  - Philadelphia BA #3 02/19/19 – 04/16/19
  - Philadelphia BA #4 05/22/18 – 07/23/18
  - Philadelphia BA #5 04/02/19 – current
  - Philadelphia BA #6 09/21/18 – 09/24/18
- None of the 6 Philadelphia BAs who telework(ed) under WAHBE have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- All 6 Philadelphia BAs who telework(ed) under WAHBE also telework under the Pilot Program.

### Reasonable Accommodation (RA)

- None of the Philadelphia BAs telework(ed) as an RA.

**<u>Division of International Operations (DIO)</u>**

Below are the DIO Benefit Authorizers (BAs) who telework for any reason from January 2014 to present.

<u>Pilot Program</u>
- 61 DIO BAs teleworked under the Pilot Program.
- Under the Pilot, the BAs telework(ed) as follows:
- All DIO BAs teleworked 2 days per week under the Pilot Program.
- None of the DIO BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

Note:
- The 61 count under the Pilot Project includes DIO BAs who no longer telework due to promotion, retirement, withdrawal/removal, and/or separation.
- DIO BAs in this region did not telework until August 2015

<u>2012 AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)</u>
- 1 DIO BA teleworked under WAHBE
- Under the WAHBE, the DIO BA teleworked as follows:
  - DIO BA #1 (WAHBE) February 4, 2018 – August 2, 2018
- This DIO BA did not have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- This DIO BA did not telework under the Pilot Program.
- This DIO BA has since retired from the Agency

<u>Reasonable Accommodation (RA)</u>
- 1 DIO BA teleworked as an RA
  - DIO BA #1 February 4, 2018 – August 2, 2018
- This DIO BA also teleworked under WAHBE.

**Office of Disability Operations (ODO)**

Below are the ODO Benefit Authorizers (BAs) who telework for any reason from January 2014

to present.

Pilot Program
- 472 BAs telework(ed) under the Pilot Program.
- Almost all ODO BAs telework 2 days per week.
- 11 out of 472 ODO BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

Note:
- The 472 count under the Pilot Project includes ODO BAs who no longer telework due to promotion, retirement, withdrawal/removal, and/or separation.
- ODO BAs in this region did not telework until August 2015

2012 AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)
- 45 ODO BAs teleworked under WAHBE
- Under WAHBE, the ODO BAs telework(ed) as follows:
  - ODO BA #1 3/1/18 – 7/18/18; 11/27/18 – 12/31/18; 4/15/19 – 5/20/19
  - ODO BA #2 11/18/18 – 3/31/19
  - ODO BA #3 10/24/17 – 12/02/17
  - ODO BA #4 12/11/17 – 01/11/18
  - ODO BA #5 08/10/18 – 06/30/19
  - ODO BA #6 10/24/16 – 11/18/16
  - ODO BA #7 03/01/18 – 04/09/18
  - ODO BA #8 03/29/19 – present
  - ODO BA #9 12/29/16 – 05/20/19
  - ODO BA #10 05/28/19 – 07/29/19
  - ODO BA #11 11/29/17 – 01/23/18
  - ODO BA #12 08/25/17 – 02/25/18
  - ODO BA #13 04/03/19 – 05/31/19
  - ODO BA #14 01/28/19 – 03/18/19
  - ODO BA #15 04/05/18 – 05/14/18
  - ODO BA #16 03/01/18 – 04/19/18
  - ODO BA #17 11/26/18 – 01/03/19
  - ODO BA #18 04/03/17 – 07/09/17
  - ODO BA #19 08/05/16 – 08/26/16
  - ODO BA #20 05/01/17 – 06/30/17
  - ODO BA #21 12/14/2018 – 05/22/19
  - ODO BA #22 10/02/17 – 02/01/18
  - ODO BA #23 08/03/16 – 04/25/17
  - ODO BA #24 01/28/19 – 04/03/19
  - ODO BA #25 06/28/16 – 11/22/16
  - ODO BA #26 11/13/18 – 01/08/19
  - ODO BA #27 2/27/19 – 3/08/19

- o ODO BA #28 04/13/17 – 5/31/17
- o ODO BA #29 08/01/16 – 09/21/16
- o ODO BA #30 10/24/17 – 05/30/18
- o ODO BA #31 01/04/19 – 01/31/19
- o ODO BA #32 04/25/16 – 12/30/16
- o ODO BA #33 06/29/18 – 02/24/19
- o ODO BA #34 06/20/17 – 07/31/18
- o ODO BA #35 05/07/18 – present
- o ODO BA #36 03/28/17 – 5/15/17
- o ODO BA #37 02/27/17 – 03/06/17
- o ODO BA #38 10/15/18 – present
- o ODO BA #39 07/18/16 – 04/17/17
- o ODO BA #40 04/10/17 – 06/21/17
- o ODO BA #41 04/08/19 – 06/19/19
- o ODO BA #42 06/19/16 – 07/20/16
- o ODO BA #43 02/14/17 – 05/17/17
- o ODO BA #44 06/24/17 - 09/18/17
- o ODO BA #45 02/01/17 – 03/31/17
- None of the 45 ODO BAs who telework(ed) under WAHBE have prior EEO activity wherein they filed informal and/or formal EEO complaints.
- 32 of the 45 ODO BAs who telework(ed) under WAHBE also telework under the Pilot Program. These BAs are included in the Pilot count above.

Reasonable Accommodation (RA)
- 14 ODO BAs telework(ed) as an RA.
- The ODO BAs telework(ed) as an RA as follows:
    - o ODO BA #1 (RA) 04/12/19 – 06/12/19 (1 episodic day for two months)
    - o ODO BA #2 (RA) 06/25/18 – 11/01/18 (5 days/week)
    - o ODO BA #3 (RA) 09/11/18 – 09/28/18 (5 days/week)
    - o ODO BA #4 (RA) 02/21/19 – 05/20/19 (5 days/week)
    - o ODO BA #5 (RA) 04/28/19 – present (5 consecutive days/month)
    - o ODO BA #6 (RA) 04/18/18 – present (3 days/week)
    - o ODO BA #7 (RA) 09/23/16 – present (2 days/week)
    - o ODO BA #8 (RA) 12/08/17 – 09/12/18 (5 days/week)
    - o ODO BA #9 (RA) 03/20/19 – present (1 day/week)
    - o ODO BA #10 (RA) 01/08/19 – 01/31/19 (5 days/week)
    - o ODO BA #11 (RA) 11/16/18 –11/18/18 (4 days/week)
    - o ODO BA #12 (RA) 08/01/16 (single day)
    - o ODO BA #13 (RA) 07/18/16 – 4/17/17 (5 days/week)
    - o ODO BA #14 (RA) 08/28/17 – present (5 days/week)
- 3 of the 14 ODO BAs who telework(ed) as an RA, also telework(ed) under WAHBE.
    - o These ODO BAs are included in the WAHBE count shown above.
- 6 of the 14 ODO BAs who telework(ed) as an RA, also telework under the Pilot Program
- None of the ODO BAs who telework(ed) as an RA have prior EEO activity.

DEBORAH LEE STACHEL
Regional Chief Counsel
TINA R. SALADINO
Assistant Regional Counsel
Office of the General Counsel
Social Security Administration
    160 Spear Street, Suite 800
    San Francisco, CA 94105-1545
    Telephone: (415) 977-8991 (Saladino)
    Facsimile: (415) 744-0134
 Agency Representatives

## UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD
### WESTERN REGIONAL OFFICE

| | |
|---|---|
| **JENNIFER TOM,** ) | **DOCKET NO.: SF-0752-19-0286I-1** |
| **Appellant,** ) | |
| ) | **DATE: May 3, 2019** |
| **v.** ) | |
| ) | **AGENCY'S RESPONSE TO** |
| **SOCIAL SECURITY ADMINISTRATION,** ) | **APPELLANT'S REQUEST FOR** |
| **Agency.** ) | **PRODUCTION # 6 AS AMENDED IN** |
| ) | **THE BOARD'S APRIL 25, 2019 ORDER** |
| _____ ) | |

Pursuant to 5 C.F.R. § 1201.73, and the Board's April 25, 2019 Order, the Social Security

Administration (SSA or agency) provides the following information:

## SF Region 9 Western Program Service Center

Below are the SF Region 9 Western Program Service Center Benefit Authorizers (BAs) who

telework for any reason from January 2014 to present.

Pilot Program
- 176 BAs telework under the Pilot Program.
- All 176 BAs telework 1 day per week.
- 11 out of 176 BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

Note: The 176 count under Pilot Program includes BAs who are currently approved to telework, and BAs who have previously worked under the Pilot Program but have since retired/opted out/withdrew from the pilot.

## 2012 SSA/AFGE National Agreement, Article 39, Work At Home by Exception (WAHBE)

- 5 BAs telework(ed).
- Under WABHE the BAs telework(ed) as follows:
    - BA #1        2/23/17-3/23/17
    - BA #2        5/31/17-6/27/17
    - BA #3        6/5/17-7/16/17, 8/7/17-9/10/17, 7/17/18-9/2/18, 9/26/18-10/9/18, 10/19/18-12/5/18
    - BA #4        1/13/18-3/1/18
    - BA #5        1/8/19-6/30/19
- 1 out of 5 BAs have prior EEO activity wherein they filed informal and/or formal EEO complaints.

Note: The 5 BAs who telework(ed) under WAHBE, also telework under the Pilot Program. These 5 BAs are included in the 176 count under Pilot Program shown above.

Reasonable Accommodation (RA)
- 0 BAs telework under RA.

Respectfully,

*/s/ Tina R. Saladino*
TINA R. SALADINO
Agency Representative

## Article 39

## Work At Home By Exception

### Section 1. Purpose

This is to provide policy on the use of SSA's work-at-home by exception provision.

### Section 2. Employees Covered

All SSA AFGE bargaining unit employees are covered by this policy.

### Section 3. Detailed Provisions

A.  Work at home by exception may be authorized for:

1.  Severely handicapped employees for whom it would be difficult to commute to the worksite.

    These employees may be considered for work at home if the following conditions are met:

    The employee has a severe medical illness, injury, or condition certified by a physician, in addition to a severely handicapping condition, that prevents the employee from commuting to work by way of public or private transportation conveyance.   An employee with a severe disability who requests permission to work at home as a reasonable accommodation must demonstrate that he or she also meets the medical conditions cited above before the request for reasonable accommodation can be considered.

    Exceptions under this provision generally do not apply to employees with severe disabilities (such as blindness, deafness and orthopedic or neurological impairments) unless the employee also has a medical condition which prevents him/her from commuting to work by public or private transportation.

    Example: A disabled person whose physical condition has deteriorated to the point that commuting to the office for his/her complete tour of duty is no longer possible, may be able to work at home a part of each week.

2. Employees, who because of an illness or injury, certified by a physician, cannot readily commute to the worksite but are able to perform job duties at home.

   Example: An employee, who is recovering from surgery, may be authorized by the physician to work full-time or part-time but not to travel from home for a specified period.  Also, a wheelchair-bound employee may periodically have prescribed bed rest to prevent or treat pressure sores.

3. Employees where conditions outside the control of the Agency make it impossible for them to commute to work.

   Example: A disabled employee utilizes a mass transit mobility service to commute to work would have no means of transportation if the service is suspended temporarily.

B. Documentation Requirements

   1. Requests to work at home by exception must be in writing and include:

      a. A statement that the employee is performing at or above the successful contribution level;

      b. A statement of the reason for working at home; e.g., provide an explanation of the disability which makes it difficult for the employee to commute to work; an explanation of the injury or illness (with medical certification concerning the employee's ability to commute and work at home);

      c. A statement of how the quality and quantity of work performed will be measured;

      d. A statement detailing how the work will be transmitted;

      e. A statement of the days and hours scheduled for work at home;

      f. A statement of the duties of the employee's position to be performed at home;

      g. A list of the equipment, if any, the employee's component will provide for the employee's use; e.g., file cabinet, portable computer, etc.; and

      h. A statement that any computer security/access issues have been resolved.

C. Prohibitions While Working at Home by Exception

   Employees approved to work at home by exception under these exception
   provisions may not work overtime at home unless they are pre-approved to
   do so by the Agency.

D. The employee will be informed by the immediate supervisor as to which
   management official has the delegated authority to approve his/her request to
   work at home by exception.

## Fw: New eOPF Hyperlink

From:   jennifer tom (jmtom3@yahoo.com)

To:     jmtom3@yahoo.com

Date:   Friday, February 22, 2019, 5:24 AM PST

**From:** Tom, Jennifer <Jennifer.Tom@ssa.gov>
**To:** jmtom3@yahoo.com <jmtom3@yahoo.com>
**Sent:** Wednesday, August 15, 2018, 7:06:56 AM PDT
**Subject:** FW: New eOPF Hyperlink

## My info

Please note: This is not your official personnel record. Refer to the Electronic Official Personnel Folder (eOPF) for your official personnel record. Please contact your Supervisor and/or Staffing Specialist if you need additional information.

EMPLOYEE INFORMATION

| NAME | JENNIFER M TOM |
|---|---|
| VETERANS PREFERENCE | NON-VET |
| FEDERAL SERVICE COMPUTATION DATE | 9/22/2008 |
| SSA START DATE | 8/17/2008 |
| WORK SCHEDULE | FULL TIME |
| HOURS | 80 |
| PERFORMANCE APPRAISAL DATE | 9/30/2017 |
| PERFORMANCE APPRAISAL RECORD SUMMARY | SUCCESSFUL |
| REEMPLOYED ANNUITANT | NOT APPLICABLE |
| TYPE OF APPOINTMENT | CAREER PERM |
| TEMPORARY PROMOTION EXPIRATION DATE | NONE |
| TEMPORARY REASSIGNMENT EXPIRATION DATE | NONE |
| DETAIL EXPIRATION DATE | NONE |
| ETHNICITY/RACE | NONE |

CURRENT POSITION INFORMATION

| POSITION TITLE | BENEFIT AUTHORIZER |
|---|---|

| POSITION NUMBER | 01E1610 |
|---|---|
| DATE ENTERED POSITION | 9/23/2012 |
| GRADE | GS-09 |
| STEP | 05 |
| SERIES | 0901 |
| ORGANIZATION | ORC SF*OARC PCO*OPERS MGR IV*MOD 10 |
| CURRENT GRADE CREDITABLE DATE | 8/15/2010 |
| DATE OF LAST EQUIVALENT INCREASE | 9/6/2015 |
| WIGI DUE DATE | 4/14/2019 |

## SSA AWARDS

| AWARD | AMOUNT | GROUP / INDIVIDUAL | AWARD DATE |
|---|---|---|---|
| INDIVIDUAL CASH AWARD NRB | $300.00 | INDIV | 8/18/2015 |
| PERFORMANCE AWARD (ROC) | $588.00 | INDIV | 4/28/2015 |
| INDIVIDUAL CASH AWARD NRB | $800.00 | INDIV | 8/20/2014 |
| PERFORMANCE AWARD (ROC) | $588.00 | INDIV | 6/19/2014 |
| INDIVIDUAL CASH AWARD NRB | $275.00 | INDIV | 8/21/2011 |

## PACS Performance Plan
## Non-Managers
## Appraisal

**Appraisal Year:** 2017

**Plan ID:** 871162

**Employee:** TOM JENNIFER M

| | | |
|---|---|---|
| Last | First | MI |

**SSN:** XXX-XX-~~####~~

| | | |
|---|---|---|
| BENEFIT AUTHORIZER | 01E1610 | 0901/09 |
| **Position Title** | **Position #** | **Series/Grade** |

| Summary Appraisal | Element Average |
|---|---|
| | Ratings in Individual Elements: |
| **Outstanding Contribution** | |
| | **Interpersonal Skills** ... 3 |
| **Successful Contribution**   X | **Participation** ... 3 |
| | **Demonstrates Job Knowledge** ... 3 |
| **Not Successful** | **Achieves Business Results** ... 3 |
| | **Total** ... 12 |
| | **Divide total number** |
| | **of Elements to equal** ... 3.0 |
| | **the Element Average** |

## Performance Appraisal:

### 1. Interpersonal Skills:

### Final Rating Discussion:

For FY17, my direct observations regarding your interpersonal skills have been strictly remote; via Skype messaging, email, and over telephone. You are able to remain respectful and professional when addressing me. Your written correspondence with the public is clear and concise. You are able to effectively relay information to the agency's beneficiaries. Furthermore, your written internal communication, in terms of workloads, is thorough. You are able to convey and request information from different functions and components. It is my expectation that you remain positive and courteous when you engage people remotely. This includes interaction with team leaders, Claims Specialists, managements, and during conference calls. I still have not been able to observe your verbal communication with external customers.

### Final Rating: Level   3

### 2. Participation:

### Final Rating Discussion:

As of mid-August 2017, you were reinserted back into the module digit range. When reviewing workloads, you show progress and follow work plans. You are able to manage your time to complete

TOM  JENNIFER  M - XXX-XX-~~XXXX~~          Appraisal Year: 2016
Position Title: BENEFIT AUTHORIZER          Position Number: 01E1610
Series/Grade: 0901/09

## PACS Performance Plan
## Non-Managers
## Appraisal

| Summary Appraisal | | Element Average | |
|---|---|---|---|
| | | **Ratings in Individual Elements:** | |
| **Outstanding Contribution** | | | |
| **Successful Contribution** | X | **Interpersonal Skills** | 3 |
| **Not Successful** | | **Participation** | 3 |
| | | **Demonstrates Job Knowledge** | 3 |
| | | **Achieves Business Results** | 3 |
| | | Total | 12 |
| | | **Divide total number** | |
| | | **of Elements to equal** | 3.0 |
| | | **the Element Average** | |

**Performance Appraisal:**

### 1. Interpersonal Skills:

### Final Rating Discussion:

Treats the public and fellow employees with courtesy and respect.
Listens and responds appropriately to feedback from the public, coworkers, employees, and managers.
Communicates effectively.
Maintains positive and productive working relationships within the office, work unit or group.

Jennifer, throughout the year, you have continued to respond to others through email in a professional tone.  Earlier this year, you answered calls on the N8NN.  During your calls, you were polite and responsive to the callers. When working with the management team, you listen and respond appropriately to feedback and accept guidance with a positive attitude.  When communicating with the other technicians in the mod, you are courteous and respectful and accept feedback and guidance with a positive attitude.

### Final Rating: Level   3

### 2. Participation:

### Final Rating Discussion:

Provides quality support to customers and fellow employees.
Contributes to achievement of the office, work unit or group goals.
Demonstrates resourcefulness by successfully seeking solutions to problems.
Completes work assignments.

TOM  JENNIFER  M - XXX-XX███████          Appraisal Year: 2015
Position Title: BENEFIT AUTHORIZER          Position Number: 01E1610
Series/Grade: 0901/09

---

## PACS Performance Plan
## Non-Managers
## Appraisal

---

| Summary Appraisal | | Element Average | |
|---|---|---|---|
| | | Ratings in Individual Elements: | |
| Outstanding Contribution | | | |
| Successful Contribution | X | Interpersonal Skills | 3 |
| | | Participation | 3 |
| Not Successful | | Demonstrates Job Knowledge | 3 |
| | | Achieves Business Results | 3 |
| | | Total | 12 |
| | | Divide total number | |
| | | of Elements to equal | 3.0 |
| | | the Element Average | |

## Performance Appraisal:

### 1. Interpersonal Skills:

### Final Rating Discussion:

The standards of this element are to treat the public and fellow employees with courtesy and respect. Listen and respond appropriately to feedback from the public, coworkers, employees, and managers. Communicate effectively and maintain positive and productive working relationships within the office, work unit or group.

I observed that you communicate effectively both in one-on-one and group situations. I also observed that you treat coworkers and other employees with courtesy and respect and you treat U.S public with utmost respect. You listen and respond appropriately to feedback from public, coworkers and managers. You maintain positive and productive working relationships within the unit. I also observed while you are on the 800# spike phone, you are sensitive to the callers needs and you provide detailed information so the callers could make an informed decision on their benefits. I appreciate your effort and dedication. You are patient and your explanation is tailored to the beneficiary understanding.

Overall, you successfully meet all standards for this element.

### Final Rating: Level   3

### 2. Participation:

### Final Rating Discussion:

TOM  JENNIFER  M - XXX-XX- ~~████~~          Appraisal Year: 2014
Position Title: BENEFIT AUTH  RIZER          Position Number: 01L   10
Series/Grade: 0901/09

## PACS Performance Plan
## Non-Managers
## Appraisal

| Summary Appraisal | | Element Average | |
|---|---|---|---|
| | | Ratings in Individual Elements: | |
| Outstanding Contribution | | | |
| Successful Contribution | X | Interpersonal Skills | 3 |
| | | Participation | 5 |
| Not Successful | | Demonstrates Job Knowledge | 3 |
| | | Achieves Business Results | 5 |
| | | Total | 16 |
| | | Divide total number | |
| | | of Elements to equal | 4.0 |
| | | the Element Average | |

## Performance Appraisal:

| 1. Interpersonal Skills: |
|---|

### Final Rating Discussion:

I appreciate the opportunity to discuss the final FY 2014 appraisal and it is intended to be a two ways communication and I encourage you to ask questions that you may have.

We met on 10/21/2014 to discuss your performance in this element and as your first line I noticed that you treat the public and fellow employees, managers and your peers with courtesy and respect.

I obtained feedback from your prior first line and team leaders and they observed that you remain professional and polite with your dealing with internal and external customers.

I have noticed that your are compassionate and listen attentively to the beneficiary and respond to their questions in a professional manner. You are courteous on the N800 # phone line.

You communicate clearly and effectively.

You work collaboratively and you maintain a positive composure when dealing with difficult people.

I observed as your first line, you maintain a professional demeanor throughout the day and you communicate effectively and maintain a productive working relationships within the module.

You adapt to changes quickly and in a positive manner.

~~· · · · · · · · · · · · · · · · · · · · · · · and looking forward to a positive and continue FY 2015~~



# SOCIAL SECURITY

January 30, 2019

***VIA UNITED PARCEL SERVICE–1Z75R91EA896963402***

Jennifer Tom
2101 Mangrove Ct.,
Antioch, CA 94509

Re:  SF-19-0294-SSA
Filed:  October 5, 2018

Dear Ms. Tom:

Enclosed is the Social Security Administration's final decision, with appeal rights, on the Complainant's discrimination complaint. Also enclosed is a copy of the Merit System Protection Board (MSPB) Appeal Form 185.  You should use MSPB Appeal Form 185 if you choose to appeal this decision to the MSPB.

Sincerely,

*Moshe Glickman /s/*
*(for)*   Claudia J. Postell
EEO Director
Office of Civil Rights and Equal Opportunity

Enclosures:
Final Agency Decision
MSPB Appeal Form 185

cc:
Nelson Arcilla, CREO Manager

SOCIAL SECURITY ADMINISTRATION    BALTIMORE, MD  21235-0001



# SOCIAL SECURITY

*VIA UNITED PARCEL SERVICE TO COMPLAINANT*

Complainant

v.

**Nancy A. Berryhill,
Acting Commissioner,
Social Security Administration**

**Case No.: ATL-19-0294-SSA**

**Date of Filing: October 5, 2018**

**FINAL AGENCY DECISION**

**January 30, 2019**

### Statement of the Claim

Complainant alleged that the Social Security Administration (SSA or Agency) subjected her to disparate treatment based on disability (physical and mental) and reprisal (prior EEO activity) when, on August 15, 2018, she was removed from employment with the Agency.

### Procedural History

On August 13, 2018, Complainant requested Equal Employment Opportunity (EEO) counseling. The EEO Counselor sought to resolve Complainant's allegations, to no avail. On September 25, 2018, the EEO Counselor issued to Complainant the Final EEO Counseling Report and Notice of Right to File a Formal Complaint of Discrimination. Complainant filed this formal complaint on October 5, 2018, pursuant to Title 29 Code of Federal Regulations (C.F.R.) § 1614. On November 5, 2018, the Agency dismissed Complainant's allegations as stating the same claim as her previous complaint, SF-18-0604-SSA, which was already pending before the EEOC. On December 17, 2018, the EEOC AJ before whom Complainant's previous EEO complaints were pending asked the Agency to rescind the dismissal of the above-cited claim. Therefore, on December 20, 2018, the SSA accepted the complaint pursuant to the Equal Employment Opportunity Commission's (EEOC's or Commission's) Regulations found in 29 C.F.R. § 1614. (Exhibits A1–3)

The SSA had already conducted a formal investigation of the complaint based on the proposed removal Complainant raised in her SF-18-0604-SSA complaint. That investigation occurred between August 10 and October 4, 2018. By letter dated October 16, 2018, we sent Complainant the Report of Investigation (ROI), which included the investigative summary. The United Parcel Service delivered the ROI to Complainant's home on October 19, 2018.

**SOCIAL SECURITY ADMINISTRATION   BALTIMORE, MD 21235-0001**

The complaint was properly processed as a "mixed case complaint" pursuant to Title 29 Code of Federal Regulations (C.F.R.) § 1614.302(d). A "mixed case complaint" is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age, disability, genetic information, or reprisal related to or stemming from an action that may be appealed to the Merit Systems Protection Board (MSPB). The complaint may contain only a claim of employment discrimination or it may contain additional non-discrimination claims that the MSPB has jurisdiction to address. A "mixed case appeal" is an appeal filed directly with the MSPB that alleges that an agency action that can be appealed is effected, in whole or in part, because of discrimination based on race, color, religion, sex, national origin, age, disability, genetic information, or reprisal. Therefore, Complainant does not have the right to a hearing before an EEOC Administrative Judge. Since the complaint contains a mixed case claim, the SSA is issuing this final decision in accordance with 29 C.F.R. §1614.302.

## Statement of the Facts

**Complainant** (former Benefit Authorizer/GS-9) was a Benefit Authorizer in the SSA Western Payment Program Service Center (WPSC), Richmond, CA. Complainant has been in her current position from August 2008 to August 15, 2018. According to her Position Description, in addition to other tasks, Complainant makes final determinations on a full range of post adjudicative actions, adjusts established benefits, makes payments through the system, and initiates and responds to telephone contacts including the 800 number.

Complainant stated her immediate supervisor is **Responsible Management Official 1 (RMO1)** (Assistant Module Manager/GS-12) and her second-line supervisor is **RMO2** (Module Manager/GS-13). Complainant stated she has filed seven prior EEO complaints. Complainant contends RMO1 and **RMO3** (Operations Manager/GS-14) were aware of her EEO activity because they were named in her complaints as responsible RMOs. Complainant stated she believes RMO1, RMO2, and RMO3 discriminated against her based on her EEO activity.

Complainant stated she received discrimination and harassment training early 2018.

**RMO1** is Assistant Module Manager, Module 10 in the WPSC in Richmond, CA. He stated he has been with the agency since September 2010 and in his current position since November 2015. RMO1 stated his first-line supervisor is RMO2 and his second-line supervisor is RMO3. He stated he is Complainant's first-line supervisor.

RMO1 testified he first became aware of Complainant's EEO activity November 2015 when he started in the unit. He testified that in March 2017 he became involved in Complainant being charged as absent without leave (AWOL). RMO1 testified he received Disability Awareness Training and Diversity Awareness training in 2017 and No Fear Act Training in 2016. RMO1 testified that he did not discriminate against Complainant. **(Exhibit 8)**

**RMO2** is Module Manager in the WPSC in Richmond, CA. She stated she has been with SSA since September 2001 and in her current position since March 2016. RMO2 stated her first-line supervisor is RMO3. She stated her second-line supervisor is the Deputy Assistant Regional Commissioner. RMO2 stated she is Complainant's second-line supervisor. RMO2 stated she became aware of Complainant's EEO activity some time in 2016 or 2017 when Complainant mentioned it and she started receiving affidavits to complete. She stated she was made aware of

3

Complainant's disability shortly after starting work at WPSC. RMO2 stated she has received training addressing discrimination and harassment since 2006. RMO2 stated she did not discriminate against Complainant. **(Exhibit 9)**

**RMO3** is the Operations Manager with the WPSC in Richmond, CA. RMO3 stated he has been in his current position since May 2015. He stated his first-line supervisor is the Acting Deputy Assistant Regional Commissioner and his second-line supervisor is the Assistant Regional Commissioner. RMO3 stated he is Complainant's third-line supervisor. RMO3 stated he became aware of Complainant's EEO activity in or around June 2015 when he became involved in one of her prior EEO complaints. He stated he has received Reasonable Accommodation for Managers and Employer of Choice for Employees with Disabilities (ECED) Access to Success, and Disability Awareness Training for Managers in October 2017. RMO3 stated he did not discriminate against Complainant. **(Exhibit 10)**

**Complainant** testified she was terminated by RMO3, effective August 15, 2018. **(Exhibit 29)**

Complainant testified RMO1, RMO2, and RMO3 were involved in the decision to issue a proposed to removal. Complainant alleged RMO2 mentioned the notice from RMO1 dated September 2017 where RMO1 informed her that the medical documentation on file was being invalidated as the reason for the proposed removal. Complainant alleged that on October 3, 2018 she provided management with the requested medical documentation and that in an email dated October 13, 2018 RMO2 acknowledged that the new medical documentation was acceptable for continued leave approval. Complainant testified her service record is excellent and was unblemished prior to RMO2 charging her with AWOL. Complainant testified she received five awards, was selected for two details, was handpicked for a special project, and developed training material. Complainant alleged RMO2 noted that she received successful performance appraisals and had no prior disciplinary record. Complainant alleged she was fired for being a qualified disabled employee who was denied a fully effective RA.[1] Complainant contends that management believed that by firing her it would put an end to the EEO cases and the investigation in to their unlawful actions. **(Exhibit 7)**

**RMO1** testified RMO2 recommended the Proposal to Remove to RMO3, the approving official. He stated his general knowledge of the reason the Proposal to Remove was issued was due to excessive AWOL. RMO1 testified Complainant is separated from the agency and does not know if she is employed elsewhere. **(Exhibit 8)**

**RMO2** stated she made the decision to issue a Proposal to Remove because Complainant had excessive unapproved absences that negatively affected her ability to perform the essential duties of a Benefit Authorizer. She testified Complainant requested to work at home full-time, but that telework is only available one day a week as part of a national pilot program for eligible Benefit Authorizers. RMO2 alleged she relied on the Douglas Factors in making her decision. RMO2 stated Complainant's EEO activity was not a factor in her decision. RMO2 testified Complainant is no longer employed by SSA. **(Exhibit 9)**

**RMO3** stated RMO2 made the decision to issue the Notice of Proposed Removal. He testified the Notice of Proposed Removal was issued to "promote the efficiency of the service" and issued in accordance with Chapter 75 of Title 5 of the United States Code and Part 752 of Title 5 of the



[1] The underlying reasonable accommodation claim is being processed under SF-18-0604.

Code of Federal Regulations, Subpart D, and Article 23 of the National AFGE/SSA Agreement. He alleged in proposing the level of discipline, RMO2 considered aggravating and mitigating factors, known as the Douglas Factors. RMO3 testified he does not know what is meant by extended telework and cannot respond to Complainant's allegation regarding extended telework to avoid being AWOL. RMO3 testified Complainant is no longer employed by the Agency. **(Exhibit 10)**

## Applicable Law

### Equal Employment Statutes & Protected Classes

#### The Rehabilitation Act of 1973, as amended (Rehab Act)

The Rehab Act prohibits employment discrimination against federal employees with disabilities. 42 U.S.C. § 12112(a) (2012). The Rehab Act incorporates the standards of the ADA Amendments Act (ADAAA) of 2008. These standards prohibit discrimination *against a qualified individual on the basis of disability.* § 12112(a). To prove membership in this class, a complainant must show s/he (1) has an impairment that substantially limits one or more major life activities, (2) has record of such an impairment, or (3) is regarded as having such an impairment. Ghee v. U.S. Postal Serv., EEOC Appeal No. 01832865, 2 (Feb. 25, 1986).

Major life activities include, but are not limited to, the general activities of "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working" as well as the operation of major bodily functions, including "functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." § 12102 (2)(A)-(B). Impairments that would affect a major life activity when active are disabilities even if those impairments are episodic or in remission. § 12102 (4)(D). However, minor impairments do not qualify as disabilities. § 12102 (3)(B). Determination of whether or not an activity is a "major life activity" should not include any reference to whether it is of "central importance to daily life." 29 C.F.R. § 1630.2(i).

The EEOC has promulgated regulations providing that the standard for evaluating "substantially limits" should be broadly construed such that the limitation need neither "significantly" nor "severely" restrict a major life activity in order to satisfy the standard. § 1630.2(j)(1). The evaluation should contain reference to the condition, manner, or duration under which a major life activity is performed in comparison to how it is performed by most people in the general population. § 1630.2(j)(4). Furthermore, the ameliorative effects of mitigating measures, with the exception of ordinary eyeglasses or contact lenses, shall not be considered; disability shall be determined based on the extent of limitations prior to using mitigating measures. § 1630.2 (j)(5).

#### Retaliation

An employer may not discriminate against any individual because of *disability*. 42 U.S.C. § 12112(a) (2012). This Act also makes it unlawful for employers to retaliate against an employee for opposing unlawful employment discrimination, filing a discrimination claim with the EEOC, or participating in an investigation of such a claim. 42 U.S.C. § 12203(a).

**Disparate Treatment**

McDonnell Douglas Standard - Burden Shifting

Discrimination complaints based on a theory of disparate treatment and brought pursuant to Title VII, the ADEA, and the Rehab Act are examined under the three-part analysis first enunciated in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973). Loeb v. Textron, Inc., 600 F.2d 1003, 1010 (1st Cir. 1979) (applying the burden-shifting scheme from McDonnell to claims brought under the ADEA); Psak v. Dep't of the Interior, EEOC Appeal No. 0120110118, 3 (Apr. 18, 2013) (applying the burden-shifting scheme from McDonnell to claims brought under the Rehab Act).

The three-part analysis first requires the complainant to establish a *prima facie* case of discrimination. McDonnell, 411 U.S. at 802. In order to establish such a case, a complainant must present facts that, if unexplained, reasonably give rise to an inference of discrimination. See McDonnell, 411 U.S. at 802. See also Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978) (clarifying that the inference is simply a presumption that the adverse employment action is "more likely than not based on the consideration of impermissible factors" if not otherwise explained). The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell, 411 U.S. at 802). Once the agency has met its burden, the complainant bears the ultimate responsibility to persuade the fact finder by a preponderance of the evidence that the reasons offered by the agency were not its true reasons, but were, instead, a pretext for discrimination. McDonnell, 411 U.S. at 804; Burdine, 450 U.S. at 253; St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-16 (1993).

*Prima Facie* – Disability

Section 501 of the Rehab Act prohibits employment discrimination against otherwise qualified federal employees with disabilities based on those disabilities. 29 U.S.C. § 791 (2012). The Rehab Act incorporates the standards of the ADA Amendments Act (ADAAA) of 2008. The ADAAA prohibits discrimination "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2012).

To establish a *prima facie* case of disability discrimination under the Rehab Act, an individual must show (1) s/he is an "individual with a disability;" (2) s/he is qualified for the position held or desired; (3) s/he was subjected to an adverse employment action; and (4) the circumstances surrounding the adverse action give rise to an inference of discrimination. Hatchett v. U.S. Postal Serv., EEOC Appeal No. 01994120, 1 (Nov. 16, 2001).

A complainant must demonstrate management was aware of the complainant's disability to satisfy a *prima facie* case for disability discrimination. Wright v. Dep't of Defense, EEOC Appeal No. 01A14136, 2 (Jan. 11, 2002) (affirming EEOC Administrative Judge's finding that "complainant failed to establish a *prima facie* case of disability discrimination because the responsible management officials were unaware of complainant's impairment at the time of the [adverse employment action]"). However, a complainant may instead establish that s/he is regarded as having an impairment if the individual can demonstrate that s/he has been subjected

to a prohibited action because of an actual or perceived physical or mental impairment. 42
U.S.C. § 12102(3)(C).

*Prima Facie* – Retaliation/Reprisal

To establish a *prima facie* case of discrimination based on retaliation, the complainant must
show: (1) s/he engaged in protected activity; (2) the agency was aware of the protected activity;
(3) subsequently, s/he was subjected to adverse treatment by the agency; and (4) there is a nexus
between the adverse treatment and the prior protected activity. Garth N. v. Dep't of the Navy,
EEOC Appeal No. 0120142878, 4 (Jan. 24, 2017) (citing Whitmire v. Dep't of the Air Force,
EEOC Appeal No. 01A00340, 2 (Sept. 25, 2000)).

To prevail in a retaliation claim, a complainant must show that a reasonable person would have
found the challenged action materially adverse.  An example of such circumstance would be an
action that might well have dissuaded a reasonable worker from making or supporting a charge
of discrimination in the future.  Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57
(2006).

## Legal Analysis



*Prima Facie* Analysis

    Disability Basis

To establish a *prima facie* case of disability discrimination under the Rehab Act, an individual
must show (1) she is an "individual with a disability;" (2) she is qualified for the position held or
desired; (3) she was subjected to an adverse employment action; and (4) the circumstances
surrounding the adverse action give rise to an inference of discrimination.

Regarding the **first prong** of her case, the record shows that Complainant suffers from migraine
headaches, vertigo, and allergic reactions to perfumes and the odor of certain cleaning supplies,.
Therefore, we find that she is an individual with a disability and established the **first prong** of
her case.

Regarding the **second prong**, while the record does not contain evidence pertaining to
Complainant's performance, there is no doubt that she was in her position for roughly ten years.
Therefore, we find that she was qualified for the position she held and established the **second
prong** of her case.  See Kohner v. Dep't of Transp., EEOC Appeal No. 0120110334, 1 (Sept. 14,
2012) (affirming AJ's decision finding complainant was a 'qualified' individual with a disability
by virtue of successfully performing his job).

Regarding the **third prong** of her *prima facie* case, Complainant was terminated from
employment with the agency.  Therefore, she established that she was subjected to an adverse
action and established the **third prong** of her case.

Regarding the **fourth prong** of her case, to establish an inference of discrimination in a disability
discrimination case, a complainant must demonstrate a nexus or causal relationship between the
disabling condition and the alleged misconduct of the agency.  Jones v. U.S. Postal Serv., EEOC
Appeal No. 01983491, 2 (Apr. 13, 2000); Schumaker v. Dep't of the Interior, EEOC Request No.
05920874, 6 (Apr. 8, 1993).  In this case, Complainant has not provided any evidence suggesting
that management's action was based on discriminatory animus.  Complainant alleges that her

*[handwritten note, right margin]:* Prove I am a QD employee.

*[handwritten note, bottom]:* D only B/c Did not take into account whether Agency failed to provid me with an effective RA instead of firing a KNOWN Qualifed disabled employee

AWOL charges were the direct result of her disability and, therefore, the removal was issued because of her disability. However, the EEOC has held that a complainant who has an excessive amount of absences must show the nexus between the absences and her disability. Complainant v. Dep't of the Navy, EEOC Appeal No. 012012278, 6 (Jan. 8, 2015). Moreover, when a complainant does not follow agency policy for taking medical leave and is disciplined as a result of her absences, there is no proof of discriminatory motivation toward her disability. Complainant v. Dep't of the Navy, EEOC 012012278. Therefore, Complainant failed to establish the **fourth prong** and failed to establish her *prima facie* case of disparate treatment based on disability.

>  Retaliation Basis

To establish a *prima facie* case of discrimination based on retaliation, the complainant must show: (1) she engaged in protected activity; (2) the agency was aware of the protected activity; (3) subsequently, she was subjected to adverse treatment by the agency; and (4) there is a nexus between the adverse treatment and the prior protected activity.

Regarding the **first prong** of her case, the record shows that Complainant requested numerous reasonable accommodations and filed multiple EEO complaints. Therefore, she established that she was engaged in protected activity and established the **first prong** of her *prima facie* case.

Regarding the **second prong**, management acknowledged being aware of Complainant's protected activity. Therefore, she established the **second prong** of her case. Regarding the **third prong** of her *prima facie* case, Complainant was subsequently removed from employment with the agency, which is an adverse action. Therefore, she established the **third prong** of her case.

Regarding the **fourth prong**, Complainant does not provide any evidence that management was acting out of any retaliatory intent. However, absent direct evidence of retaliatory intent, a complainant may establish causation by showing temporal proximity between the protected activity and the adverse action. Bennett v. Henderson, 15 F.Supp.2d 1097, 1112 (Aug. 7, 1998). The nexus or causal connection may be evidenced by the adverse action following the protected activity within a period of time and in a manner suggestive of a retaliatory motive. Cline v. Dep't of the Army, EEOC Appeal No. 0120112757, 3 (Aug. 17, 2012). Generally, a nexus may be established if the prior activity and the alleged actions occurred within less than one year of each other. Complainant v. Dep't of the Air Force, EEOC Appeal No. 0120133200, 2 (Dec. 18, 2014) (finding one year in between events "too remote to supply the necessary nexus"). See also Ellison v. U.S. Postal Serv., EEOC Appeal 0120073973, n.4 (Nov. 17, 2009) (affirming AJ's summary judgment, which included the determination that the complainant failed to establish the *prima facie* case for reprisal discrimination because no nexus was created when a year and a half transpired between the prior activity and the alleged adverse treatment).

In this case, the record shows that Complainant was actively involved in her previous EEO complaints when she received the decision to remove her from employment. Therefore, we find that Complainant established the **fourth prong** and established her *prima facie* case of disparate treatment based on retaliation, but not disability.

>  Management's Justification

If a *prima facie* case is established, the burden shifts to the agency to articulate a legitimate, nondiscriminatory reason for the challenged action. McDonnell, 411 U.S. at 802; Burdine, 450 U.S. at 253-54. The agency's burden is met by simply proffering evidence that raises a genuine

issue of fact as to whether it discriminated against the complainant. This is not a burden of persuasion, but rather a burden of production to "clearly set forth, through the introduction of admissible evidence, the reasons for [its employment decision]." Burdine, 450 U.S. at 254-55. Evidence of a legitimate, nondiscriminatory reason must be sufficient to allow the trier of fact rationally to conclude that the agency's action was not based on unlawful discrimination. Nguyen v. Gen. Servs. Admin., EEOC Appeal No. 0120101852, 3 (Sept. 28, 2011). This burden is not onerous but must "provide a specific, clear, and individualized explanation." Kathy D. v. Dep't of Labor, EEOC Appeal No. 0120141643, 2 (July 19, 2016). An explanation too generalized or vague for a complainant to rebut is insufficient to constitute a legitimate, nondiscriminatory reason. Chong T. v. Dep't of Homeland Sec., EEOC Appeal No. 0120140085, 3 (Jan. 15, 2015).

In this case, management provides the following legitimate, nondiscriminatory reasons for its action. Management explains Complainant's attendance was not dependable. The documentation about Complainant's removal cites 70 separate incidents when Complainant was charged AWOL for taking unapproved leave. See Tolbert v. Dep't of the Air Force, EEOC Appeal No. 0120053343 (Feb. 23, 2007) (finding no harassment where Agency issued disciplinary action based on leave policy). Therefore, we find management articulated a legitimate, nondiscriminatory reason for its action. Complainant v. Dep't of Veterans Affairs, EEOC Appeal No. 0120141713 (Dec. 4, 2014) (upholding termination where testimony, performance documents, and notice of termination "paint a compelling picture of Complainant's performance deficiencies").

Pretext

Once the agency produces evidence of a legitimate, nondiscriminatory reason, the presumption raised by the prima facie case disappears, and the agency will prevail unless the complainant proves, by a preponderance of the evidence, that the legitimate reasons articulated by the agency were not its true reasons but were, instead, a pretext for discrimination. St. Mary's, 509 U.S. at 519; Burdine, 450 U.S. at 256; Pavelka v. Dep't of the Navy, EEOC Request No. 05950351, 3 (Dec. 14, 1995). To prove a reason is pretext for discrimination, a complainant must show that the reason was false and that discrimination was the real reason. St. Mary's, 509 U.S. at 515. Therefore, the fact finder must both disbelieve the employer's articulated reason and believe complainant's explanation that unlawful discriminatory animus motivated the agency's actions. St. Mary's, 509 U.S. at 519.

The more idiosyncratic or questionable the employer's decision, the greater the likelihood of exposing it as a pretext. Loeb v. Textron, Inc., 600 F.2d 1003, 1012 n.6 (1st Cir. 1979). Allegations of pretext may be supported by evidence of discriminatory statements; past dissimilar treatment; past personal treatment attributable to the selecting officer; statistical evidence or comparative data, revealing differences in treatment across protected class lines; unequal applications of agency policy; deviations from standard procedures without justification; and inadequate explanation of inconsistencies in the evidentiary record. McDonnell, 411 U.S. at 804-05; Emilia Z. v. Dep't of Hous. & Urban Dev., EEOC Appeal No. 0120142952, 2 (Feb. 4, 2016). However, in order to prove pretext, it is not enough to simply disagree with the agency's actions. Alexandria P. v. U.S. Postal Serv., EEOC Appeal No. 0120150286, 4 (Oct. 20, 2015). EEO laws "cannot prevent employers from making decisions that their employees disagree with, unless those decisions are rooted in a statutorily proscribed motivation. Emilia Z., EEOC Appeal

No. 0120142952 at 3.  Additionally, mere assertions, speculations, unsupported beliefs, or conclusory answers are not enough to establish pretext.  Complainant v. Dep't of Homeland Sec., EEOC Appeal No. 01020133401, 3 (May 7, 2015); Complainant v. Dep't of Agric., EEOC Appeal No. 0120130270, 3 (Sept. 18, 2015).

In this case, Complainant failed to prove that management's articulated reason was false, which is the essence of pretext.  See St. Mary's, 509 U.S. at 515.  As we discussed in the *prima facie* analysis, Complainant insists that her requests for leave should have been approved and that the fact that they were not is proof of discriminatory intent.  However, she has not provided evidence that shows a nexus between her absences and her disability.  Furthermore, despite establishing her *prima facie* case of retaliation, the EEOC has held that temporal proximity, standing alone, does not meet Complainant's burden of proving by a preponderance of the evidence that management retaliated against her.  See Vaughn v. Dep't of Agric., EEOC Appeal No. 0120130948 (Aug. 30, 2013); Maybery v. Dep't of the Navy, EEOC Appeal No. 0120110045 (Jan. 1, 2012); Kennedy v. Dep't of Veterans Affairs, EEOC Appeal No. 0120083120 (Dec. 24, 2008).

Based on a review of the ROI in its entirety, we find management articulated legitimate, nondiscriminatory reasons for its action; and, that the preponderance of the evidence does not support Complainant's claim of unlawful discrimination.

## Decision

Accordingly, we find SSA did not discriminate against Complainant based on disability or reprisal, as alleged.

## Statement of Relief

As Complainant is not a prevailing party, no relief is awarded in connection with this complaint.

## Notice of Rights

Complainant may not file an appeal with the Equal Employment Opportunity Commission (EEOC) at this time.  If Complainant is dissatisfied with SSA's decision, an appeal may be filed to the:

**Western Regional Office**
**Merit Systems Protection Board (MSPB)**
**201 Mission Street**
**Suite 2310**
**San Francisco, CA 94105**
**Fax No. 415-904-0580**

Complainant's appeal must be in writing and must be filed within **30 calendar days** of receipt of our decision.  If Complainant wants a hearing, Complainant may request it of the MSPB when filing the appeal.

**Complainant must provide a copy of the appeal to SSA when the appeal is filed with the MSPB.** Send a copy of the appeal to:

EEO Director
Office of Civil Rights and Equal Opportunity
ATTN: FAD APPEALS DIVISION
Social Security Administration
P.O. Box 17712
Baltimore, MD 21235-7712

If Complainant appeals to the MSPB and is dissatisfied with the MSPB's final decision, Complainant may then ask the EEOC to review the MSPB's final decision.

Instead of appealing to the MSPB, Complainant may file a civil action in an appropriate U.S. District Court within **30 calendar days** after receipt of SSA's decision.

**Complainant also has the right to file a civil action in an appropriate U.S. District Court:**

- Within **30 calendar days** of receiving the final MSPB decision; or

- If more than **120 calendar days** have passed since filing an appeal with the MSPB and no final decision has been made.

If asks the EEOC to review the final MSPB decision, Complainant has the right to file a civil action in an appropriate U.S. District Court:

- Within **30 calendar days** of receiving the EEOC's decision on the request; or

- If more than **180 calendar days** have passed since filing the request for review with the EEOC and no final decision has been made.

If Complainant decides to file a civil action and does not have or cannot afford the services of an attorney, Complainant may ask the Court to appoint an attorney representation. Complainant may also ask the Court's permission to file the action without payment of costs, fees, or other security. **Granting or denying Complainant's request is within the sole discretion of the Court.** Complainant must file both the request and the civil action <u>WITHIN NINETY (90) CALENDAR DAYS</u> of the date of receipt of the final order or final decision from SSA or the EEOC's final decision. Filing a request for an attorney does not extend Complainant's time in which to file a civil action.

**If Complainant files a civil action, the Acting Commissioner of Social Security, Nancy A. Berryhill, must be named as the defendant. Failure to name the Acting Commissioner may result in dismissal of the case.** If Complainant files a civil action, administrative processing of the complaint will end.

(for)     Claudia J. Postell
          EEO Director
          Office of Civil Rights and Equal Opportunity